UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHAMMED RAHMAN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>GATE GOURMET, INC., et al.,<br><br>　　　　Defendants. | Case No. 3:20-cv-03047-WHO<br><br>**ORDER LIFTING STAY**<br><br>Re: Dkt. No. 35 |

The parties in this putative class action agreed to stay the case to examine a proposed settlement reached in California state court. That state-court case had previously been in federal court and is between the defendant here, Gate Gourmet[1], and a different named plaintiff representing essentially the same putative class. The plaintiff here, Mohammed Rahman, sought to intervene in that matter to prevent the settlement from being approved. According to him, it does a disservice to the class and may be collusive. The state-court judge, the Hon. Elihu M. Berle, has yet to rule on that motion.

Rahman moves to lift the stay. That motion is granted.[2] Because this case was filed before the state-court action, Judge Berle asked the parties to inquire about my views on whether that case should be stayed in favor of this one. In response to Judge Berle's inquiry, I explain below why I conclude that this case is the better vehicle for these overlapping claims to proceed. This case was the first-filed—both California and federal law usually favor that case over others. And the state-court action shows indications of being a "reverse auction" (in which a class-action

---

[1] "Gate Gourmet" refers to defendants Gate Gourmet, Inc., and Gategroup U.S. Holdings, Inc.

[2] Oral argument is unnecessary and the hearing on the motion is VACATED.

defendant chooses its favorite class counsel to negotiate a settlement that binds the class, regardless of which case was first) leading to a collusive settlement and a stipulated remand to state court (to avoid federal rules indicating that case to being stayed or dismissed in favor of this one). That said, whether to stay the state-court case is a decision for Judge Berle, not me.

The case management conference set for December 1, 2021, is CONTINUED to January 4, 2022, so that we can discuss the status of this case after Judge Berle holds an upcoming hearing on these issues.

## BACKGROUND

Rahman worked as a non-exempt employee of Gate Gourmet, located at the San Francisco International Airport, from January 2014 until March 2020. First Amended Complaint ("FAC") [Dkt. No. 12] ¶ 11. Gate Gourmet is incorporated in Delaware with its principal place of business in Virginia. *Id.* ¶¶ 9–10. Rahman alleges—on behalf of himself, on behalf of a proposed class, and under the California Private Attorneys General Act ("PAGA")—that Gate Gourmet failed to compensate Rahman and other employees for all hours worked. *Id.* ¶ 17. In brief, he alleges that Gate Gourmet required employees to submit to searches off-the-clock and without compensation, including during what should have been overtime and during meal breaks. *Id.* ¶¶ 17–19.

Rahman filed his complaint in this court in May 2020. Dkt. No. 1. The case proceeded to discovery. In May 2021, Gate Gourmet filed a notice of a related matter, seven months after that action had been filed. Dkt. No. 31. The related matter ("*Diaz*") was a PAGA suit and class action by a different plaintiff against Gate Gourmet for materially similar alleged violations in the U.S. District Court for the Central District of California. *See Alicia Noemi Bautista Diaz v. Gate Gourmet, Inc.*, C.D. Cal. No. 2:20-cv-09454.

In June 2021, Rahman moved to put these two cases (and a third not at issue here) into multi-district litigation ("MDL"). *See In re: Gate Gourmet, Inc., Wage and Hour Employment Prac. Lit.*, MDL No. 3012. Three days later, the parties in *Diaz* reached a proposed class action settlement. Dkt. No. 33 at 3. Gate Gourmet represented that the settlement "would release all claims asserted by Plaintiff Rahman in this action, if approved." *Id.* The *Diaz* parties stipulated to remanding the matter to state court, which the federal judge approved. *Id. Diaz* is now pending in

2

1  the Superior Court of California before Judge Berle. *Id.*; *see Diaz v. Gate Gourmet, et al.*, Sup.
2  Ct. Cal., 20STCV34299.
3        In July 2021, I approved the parties' stipulation staying the case. *See* Dkt. Nos. 32, 33.
4  The parties sought a stay because of the "cost of discovery and motion practice," because the case
5  "may become moot" by the *Diaz* settlement, and for the "orderly administration of justice." Dkt.
6  No. 33 at 4.
7        On October 15, 2021, Judge Berle held a hearing in *Diaz* on Rahman's motion to intervene
8  in that case. *See* Reporter's Transcript of Proceedings, Oct. 15, 2021 [Dkt. No. 35-1, Ex. F]. He
9  ultimately continued the hearing without ruling so that he could receive supplemental briefing on
10 the issue of intervention and so that counsel for all parties could attempt to reach a "global
11 settlement." *Id.* at 22:21–23:6. He also requested:

> I am going to ask the parties to contact -- to file an appropriate pleading -- not to contact orally, obviously -- but the parties together; that is, the counsel for Diaz, counsel for Rahman, and defendant to file an inquiry with the federal court in the Northern District as to whether the Northern District would consider whether or not the case in the Northern District should proceed and whether or not this case should be stayed.
>
> In light of the fact that the case in the Northern District was filed first -- I realize there is an issue of concurrent jurisdiction but the case is now pending in different courts -- one in the state court, one in the federal court, so it's an issue of comity rather than any requirement of one case proceed before the other case.

*Id.* at 23:7–22.

      The parties filed a joint a joint status report three days later alerting me to these developments, *see* Dkt. No. 34, and Rahman moved to lift the stay four days after that, *see* Corrected Motion to Lift Stay ("Mot.") [Dkt. No. 36]. The hearing before Judge Berle is set for December 13, 2021.

## LEGAL STANDARD

      "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Whether to stay a case—and therefore whether to lift that stay—is committed to the district court's discretion. *Id.* To assess whether a stay is warranted, the court weighs the "competing interests" at stake, including "the possible damage which may result from the granting

3

1  of a stay, the hardship or inequity which a party may suffer in being required to go forward, and
2  the orderly course of justice measured in terms of the simplifying or complicating of issues, proof,
3  and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*,
4  398 F.3d 1098, 1110 (9th Cir. 2005) (citation omitted). The court should also consider whether
5  changed circumstances affect those considerations. *See, e.g.*, *Akeena Solar Inc. v. Zep Solar Inc.*,
6  No. C 09-05040 JSW, 2011 WL 2669453, at *2 (N.D. Cal. July 7, 2011).

**DISCUSSION**

For the reasons that follow, I conclude that the stay of this case should be lifted. Because that question depends in large measure on *Diaz* and because Judge Berle has requested my views, I also explain why I conclude that this case, not *Diaz*, should proceed—though I emphasize that whether to stay *Diaz* is Judge Berle's decision. Gate Gourmet is ORDERED to file a notice in this case when Judge Berle determines whether or not to stay *Diaz* and when he determines whether or not to permit Rahman to intervene.

Rahman argues that the stay in this case should be lifted so that it may be fully litigated and that *Diaz* can be stayed by that court. Mot. 1; Reply ISO Mot. [Dkt. No. 39] 13–17. Gate Gourmet replies that the stay should be maintained for the reasons it was entered in the first place. Opposition to the Mot. ("Oppo.") [Dkt. No. 39] 4–6.[3]

The stay was only put in place to assess the impact of the *Diaz* proposed settlement. Now that Rahman has sought to intervene and Judge Berle has asked for my views on which action should proceed, I see no reason to maintain the stay. Further, if this action proceeds instead of *Diaz*, there would not even be an arguable reason for a stay because there would be no parallel proceeding. *Cf. Lockyer*, 398 F.3d at 1112 (holding a stay inappropriate because, among other reasons, the parallel proceeding would not significantly impact the case). For these reasons—and in light of Judge Berle's request—the core issue is whether this case or *Diaz* is the proper vehicle to litigate these matters. That analysis, too, implicitly dictates the result of the classic stay factors

---

[3] Rahman's motion took the preemptive position that abstention was not appropriate under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). *See* Mot. 16–18. Gate Gourmet's Opposition clarifies that it does not argue a stay should be maintained due to that doctrine. *See* Oppo. 6 ("No one is asking the Court to abstain under *Colorado River*.").

4

because it determines the competing harms and interests.

To start, this case was filed first. Usually, considerations of efficiency, economy, and avoiding duplicative litigation give favor to the first-filed case. *See, e.g.*, *Barapind v. Reno*, 225 F.3d 1100, 1109 (9th Cir. 2000). If *Diaz* had remained pending in federal court, it would likely have been subject to the first-to-file rule and stayed or dismissed in favor this case. *See Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94–95 (9th Cir. 1982) (discussing the rule); *Molander v. Google LLC*, 473 F. Supp. 3d 1013, 1018 (N.D. Cal. 2020) (collecting cases applying the principle to class actions with the same class). Or it may have been put into an MDL. *See* 28 U.S.C. § 1407. But the parties in *Diaz* stipulated to remand to state court, where the federal first-to-file rule does not apply and the MDL process cannot reach. California law, though, also gives primacy to the first-filed case, even when that case is in federal court. *See, e.g.*, *Thomson v. Cont'l Ins. Co.*, 66 Cal. 2d 738, 747 (1967) (discussing state courts' discretion to stay actions in favor of a "previously filed federal court suit on the same issues").[4] Indeed, it would be an unfortunate development in the law to incentivise defendants to pick their favorite proposed class action and stipulate to remanding it to escape the first-to-file rule.

Further, the parties' conduct in *Diaz* smacks of a "reverse auction" leading to a collusive settlement. Gate Gourmet removed *Diaz* to federal court in October 2020. Even though there is significant overlap in the claims (because both cases are proposed class actions), Gate Gourmet failed to put Rahman and me on notice that there was a related case. *See* Civ. L.R. 3-13(a) (mandating notice of such actions). If it had done so, there presumably would have been motions about the first-to-file rule or an earlier motion about MDL transfer. Instead, Gate Gourmet negotiated a pre-certification settlement with the plaintiffs' counsel in *Diaz* and swiftly stipulated to remand the case to state court once it did so. It only filed notices in this case and *Diaz* a month

---

[4] Rahman argues that California law *requires* Judge Berle to stay *Diaz* in favor of this case. How to apply California law in his court is up to Judge Berle. But as I read the cases, they give him the discretionary choice whether to stay the matter or not. *See Thomson*, 66 Cal. 2d at 747; *Benitez v. Williams*, 219 Cal. App. 4th 270, 276 (2013) ("It is black letter law that, when a federal action has been filed covering the same subject matter as is involved in a California action, the California court has the discretion but not the obligation to stay the state court action." (internal quotation marks, citation, and alteration omitted)).

5

before that remand.  *See* Dkt. No. 31.  Even today, it has offered no principled reason for choosing to settle a later-filed case.

All of this indicates a typical reverse auction in which "the defendant in a series of class actions picks the most ineffectual class lawyers [or those most willing to compromise the class's interest] to negotiate a settlement with in the hope that the district court will approve a weak settlement that will preclude other claims against the defendant."  *Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091, 1099 (9th Cir. 2008).  Courts are highly skeptical of reverse auctions.  *See id.*  Class action settlements bind the entire class, so it is important to be vigilant that class counsel has not sacrificed the class's interest for their own self-interest.  *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).  And *Diaz* is a pre-certification settlement, a type that merits especially exacting scrutiny because such settlements often signal impermissible collusion.  *See id.* at 946–47.

The remand to state court is also difficult to understand unless it was meant to serve only class counsel and Gate Gourmet, not the putative class.[5]  As I have already noted, remand to state court put a layer of insulation between this first-filed case and Gate Gourmet's favored case by ensuring that it would not be halted by the first-to-file rule.  Further, after Rahman learned about *Diaz*, he sought to transfer it here through the MDL process on June 15, 2021.  *See In re: Gate Gourmet*, MDL No. 3012.  The *Diaz* settlement was reached three days later and the case was remanded 10 days after that.  *See Diaz*, C.D. Cal. No. 2:20-cv-09454, Dkt. Nos. 25, 26.

In short, if this case were to yield to *Diaz*, it would reward a case that appears to be reverse auction.  It would incentivise class-action defendants to pick their favorite class counsel from among various cases; reach a pre-certification settlement that is good for the defendants, good for class counsel, and potentially bad for the class; and then stipulate to remanding to state court to escape the first-to-file rule.

While there is no proposed settlement here, which in some sense means that *Diaz* is at a

---

[5] The remand stipulation included no rationale other than the fact of settlement, which of course does not explain why remand would be appropriate.  *See Diaz*, C.D. Cal. No. 2:20-cv-09454, Dkt. No. 25.

6

1    more advanced stage than this case, that does not argue for a different result here.  To the contrary,

2    the *Diaz* settlement was not reached after going through the crucible of class certification and

3    dispositive motions.  *Diaz*, like this case, was still in discovery before the parties hurriedly settled.

4    The indications of collusion present there make me discount any argument that this case should

5    remain stayed.

6        Gate Gourmet's primary response is that the same reasons that the parties entered the stay

7    initially still favor it.  *See* Oppo. 1, 4–6.  As I have explained, the stay was only entered pending

8    review of the *Diaz* proposed settlement.  The parties have now done so, and Rahman has

9    concluded it is insufficient and moved to intervene there.  Circumstances have also changed,

10   including that Judge Berle inquired about my views of which case should be stayed.  Gate

11   Gourmet argues that pursuing this action will cost it money and time.  *Id.* 4–5.  True enough, but

12   that is the case in any judicial proceeding; Rahman has the right to pursue his claims unless there

13   are compelling reasons to keep the case stayed.

14       All that I am deciding today is whether to lift the stay in this matter.  In response to Judge

15   Berle's inquiry, I have explained why it seems to me that this action, rather than *Diaz*, should

16   proceed.  But it is his decision whether *Diaz* should be stayed, not mine.  He is also better

17   positioned than I to assess the concerns about collusion that I have raised.  If *Diaz* proceeds and is

18   settled, I will apply whatever res judicata rules are appropriate to this case.

## CONCLUSION

20   The motion to lift the stay is GRANTED.  Gate Gourmet is ORDERED to file a copy of

21   this Order on the docket in *Diaz* within 24 hours.  The December 1, 2021, case management

22   conference is CONTINUED to January 4, 2022, at 2:00 pm.  The parties' Joint Case Management

23   Statement, due December 28, 2021, should update me on the status of *Diaz* and make any

24   proposals necessary to adjust the case schedule in light of these developments.

25   **IT IS SO ORDERED.**

26   Dated: November 22, 2021

William H. Orrick
United States District Judge

7