1

2   Randall B. Aiman-Smith #124599
    Reed W.L. Marcy #191531
3   Hallie Von Rock #233152
    Brent A. Robinson #289373
4   7677 Oakport St. Suite 1150
    Oakland, CA 94621
5   T 510.817.2711
    F 510.562.6830
6   ras@asmlawyers.com
    rwlm@asmlawyers.com
7   hvr@asmlawyers.com
    bar@asmlawyers.com
8
    Attorneys for Plaintiff Mohammed Rahman
9
    **Additional counsel listed on following page
10

11              UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF CALIFORNIA
12

| | |
|---|---|
| 13  MOHAMMED RAHMAN, ALICIA )<br>NOEMI BAUTISTA DIAZ, AND )<br>14  PASCAL MOORE, individually and on )<br>behalf of all others similarly situated, )<br>15                          )<br>        Plaintiffs, )<br>16                          )<br>    v.                     )<br>17                          )<br>GATE GOURMET, INC., )<br>18  GATEGROUP U.S. HOLDING, INC., )<br>and DOES 1-10, inclusive, )<br>19                          )<br>        Defendants. )<br>20                          )<br> | Case No. 4:20-cv-03047-WHO<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: September 28, 2022<br>Time: 2:00 PM<br><br>Hon. William H. Orrick<br>Courtroom 2, 17th Floor<br>San Francisco Courthouse<br>450 Golden Gate Avenue<br>San Francisco, CA 94102<br><br>Action Filed May 4, 2020 |

1  KANE MOON (SBN 249834)
2  ALLEN FEGHALI (SBN 301080)
   LILIT TER-ASTVATSATRYAN (SBN 320389)
3  MOON & YANG, APC
   1055 W. Seventh St., Suite 1880
4  Los Angeles, CA 90017
5  T: 213.232.3128
   F: 213.232.3125
6  kane.moon@moonyanglaw.com
7  allen.feghali@moonyanglaw.com
   lilit@moonyanglaw.com
8
   Attorneys for Plaintiff Alicia Noemi Bautista Diaz
9
10 JOSEPH LAVI (SBN 209776)
   VINCENT C. GRANBERRY. (SBN 276483)
11 MELISSA A. HUETHER. (SBN 316604)
   LAVI & EBRAHIMIAN, LLP
12 8889 W. Olympic Blvd., Suite 200
13 Beverly Hills, California 90211
   Telephone: (310) 432-0000
14 Facsimile: (310) 432-0001
15 jlavi@lelawfirm.com
   vgranberry@lelawfirm.com
16 mhuether@lelawfirm.com
17
   Attorneys for Plaintiff Pascal Moore
18
19
20
21
22
23
24
25
26
27
28

# NOTICE OF MOTION AND MOTION

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 28, 2022, at 2:00 p.m., in Courtroom 2 of the United States District Court for the Northern District of California, San Francisco Division, the Honorable William H. Orrick, presiding, Plaintiffs Mohammed Rahman, Alicia Noemi Bautista Diaz, and Pascal Moore, on behalf of themselves, the Plaintiff Class, the California Labor Workforce Development Agency, and all others similarly situated (collectively "Plaintiffs"), move the Court for preliminary approval of the Class Action and Private Attorneys General Act ("PAGA") Settlement Agreement and Release (the "Settlement Agreement" or the "Settlement," attached as **Exhibit 1** to the accompanying Declaration of Hallie Von Rock).

The Settlement resolves all of the claims in this action on a class basis. In particular, Plaintiffs move for orders:

(1)    Granting preliminary approval of the Settlement;

(2)    Conditionally certifying the Settlement Class for settlement purposes;

(3)    Approving the proposed schedule and procedure for completing the final approval process for the Settlement, including setting the Final Approval Hearing;

(4)    Approving the Class Notice as it pertains to the Class (attached as **Exhibit A** to the Settlement Agreement);

(5)    Approving the Postcard Class Notice as it pertains to the Class (attached as **Exhibit B** to the Settlement Agreement);

(6)    Preliminarily appointing Aiman-Smith & Marcy, PC, Moon & Yang, APC, and Lavi & Ebrahimian, LLP as Class Counsel for purposes of this Settlement;

(7)    Preliminarily appointing Mohammed Rahman, Alicia Noemi Bautista Diaz, and Pascal Moore as Class Representatives for purposes of this Settlement;

(8)    Preliminarily appointing and approving Atticus Administration ("Atticus") as the Settlement Administrator for the Class;

(9)    Authorizing the Settlement Administrator to mail and email the approved Class

Notice to the Class as set forth in the Settlement Agreement; and

      (10)    Preliminarily approving Class Counsel's request for attorney's fees and costs.

      Plaintiffs bring this unopposed Motion pursuant to Federal Rule of Civil Procedure 23(e). The Motion is based on this notice, the following Memorandum of Points and Authorities, the Declaration of Hallie Von Rock, the Settlement Agreement attached as Exhibit 1 thereto, the Declarations of Melissa A. Huether and Kane Moon, the Declarations of Mohammed Rahman, Alicia Noemi Bautista Diaz, and Pascal Moore and all other records, pleadings, and papers on file in the consolidated action and such other evidence or argument as may be presented to the Court at the hearing on this Motion. Plaintiffs also submit a Proposed Order Granting Preliminary Approval of Class Action Settlement with their moving papers.

Date: August 16, 2022

                Respectfully submitted,

                */s/ Hallie Von Rock*

                _____

                Hallie Von Rock
                AIMAN-SMITH & MARCY PC
                Attorneys for Plaintiffs and the Plaintiff Class

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs Mohammed Rahman, Alicia Noemi Bautista Diaz, and Pascal Moore, on behalf of themselves, the Plaintiff Class, and the Labor Workforce Development Agency (collectively "Plaintiffs"), having reached a class-wide settlement with Defendants Gate Gourmet, Inc. and gategroup U.S. Holding, Inc.  (collectively "Defendants" or "Gate Gourmet"), seek preliminary approval of the Settlement. After two years of intense litigation, including contentious motions in multiple trial courts, including the present court, the Los Angeles Superior Court, and the Central District of California, and following formal discovery, amendments to the complaint, informal pre-mediation discovery including outreach to class members, and extensive arm's-length negotiations between counsel, the Parties have reached a global settlement of the Actions, memorialized in the proposed Class Action and Private Attorneys General Act Settlement Agreement and Release (the "Settlement Agreement" or the "Settlement"). *See,* Declaration of Hallie Von Rock ("Von Rock Dec."), **Exhibit 1** (filed herewith).

Plaintiffs brought this class and Private Attorneys General Act ("PAGA") action on behalf of approximately 7,000 current and former hourly, non-exempt workers employed at any Gate Gourmet facility in California (the "Class Members"). Plaintiffs contend that Defendants violated California wage and hour laws by failing to pay all hours worked, failing to pay minimum wages, failing to pay overtime wages, failing to authorize and permit and/or make available meal periods, failing to authorize and permit and/or make available rest periods, failing to time pay earned wages during employment, failing to provide accurate itemized wage statements, failing to timely pay wages upon separation, failing to pay all wages due on regularly scheduled paydays, and violating the California Business and Professions Code.

The Settlement resolves the Class claims for a total non-reversionary settlement of $3,850,000. The Settlement provides excellent average recoveries of approximately $309 per Settlement Class Member. With this Settlement, the Parties are resolving numerous wage and hour claims unlikely to have been prosecuted as individual actions. The Settlement is fair,

**Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement; Memo of Ps and As**
*Rahman, et al. v. Gate Gourmet, Inc., et al*                                                                                            **Case No. 4:20-cv-03047-WHO**
Page 1

reasonable, and adequate in all respects, and Plaintiffs respectfully request that the Court grant the requested approval.

## II.    FACTUAL BACKGROUND

Plaintiffs are those individuals who, according to Defendants' personnel and payroll records, worked as non-exempt employees at any Gate Gourmet facility in California during the period of May 4, 2016 through the date of preliminary approval.

The Class is comprised of approximately 7,000 individuals. Gate Gourmet provides airline catering solutions and provisioning services for airlines, both in-flight and at airports. In California, Gate Gourmet employed Class Members at airport locations in San Francisco, Los Angeles, and San Diego.

Plaintiffs allege that Class Members experienced wage and hour violations in their work for Defendants. In particular, Plaintiffs contend that Gate Gourmet required Class Members to work off the clock during preliminary and postliminary activities, as well as during security inspections.  Plaintiffs allege that as a result of this off-the-clock work, Defendants failed to pay all hours worked, failed to pay minimum wages, failed to pay overtime wages, failed to provide duty-free, 30 minute meal periods, failed to permit and/or make available duty-free 10 minute rest periods, failed to timely pay earned wages during employment, failed to provide accurate itemized wage statements, failed to timely pay wages upon separation, failed to pay all wages due on regularly scheduled paydays, and violated the California Business and Professions Code. *See,* Declaration of Hallie Von Rock ("Von Rock Dec.") ¶ 3.

Defendants have at all times denied, and continue to deny, all of these allegations, and deny any and all liability for Plaintiffs' claims.

## III.    PROCEDURAL HISTORY

On May 4, 2020, Plaintiff Rahman filed this class action in the Northern District of California and amended to add PAGA claims on July 10, 2020.

On September 4, 2020, Plaintiff Alicia Noemi Bautista Diaz filed a class action complaint in the Superior Court of California, County of Los Angeles, Case Number 20STCV34299. On October 15, 2020, the action was removed to the Central District of

**Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement; Memo of Ps and As**
*Rahman, et al. v. Gate Gourmet, Inc., et al*                                    **Case No. 4:20-cv-03047-WHO**
Page 2

California, Case Number 2:20-cv-09454-SB-MAA; on June 28, 2021, the action was remanded to the Superior Court, County of Los Angeles; on December 22, 2021, the action was removed again to the Central District of California; on February 23, 2022, the action was transferred to the Northern District of California and then reassigned, Case Number 22-cv-1136-WHO.

On May 10, 2021, Plaintiff Pascal Moore filed a class action complaint in the Superior Court of California, County of Los Angeles, Case Number 21STCV17642. On July 19, 2021, the action was removed to the Central District of California, Case Number 2:21-cv-05834-ODW-SP.

Defendants and Plaintiff Bautista Diaz mediated with Jeffrey Krivis on June 7, 2021. *See*, Von Rock Dec. ¶ 9. They did not reach a settlement that day. *Id*.

On June 15, 2021, Plaintiff Rahman filed a motion for transfer with the U.S. Judicial Panel for Multidistrict Litigation and filed the necessary motion that same day. *Id*. ¶ 10.

On June 18, 2021, Defendant and Plaintiff Diaz reached a settlement in principle and, thereafter, stipulated to an order remanding the action to Los Angeles Superior Court for settlement review. *Id*. ¶ 11.

On July 1, 2021, Plaintiff Rahman first learned of the putative settlement from Defense counsel. *Id*. ¶ 12.

On July 17, 2021, Plaintiff Rahman stipulated to a provisional stay of the *Rahman* action, to permit Plaintiff Rahman to focus on attacking the proposed settlement. *Id*. ¶ 13.

On July 22, 2021, Plaintiff Rahman filed a petition in the *Diaz* action in Los Angeles Superior Court seeking leave to file a complaint in intervention, and alternately for a stay of the action in favor of the first-filed *Rahman* action. *Id*. ¶ 14.

On August 27, 2021, in response to a formal request from Plaintiff Rahman, the LWDA initiated an investigation into the *Diaz* settlement, by giving notice in response to the *Diaz* amended PAGA charge, which sought authority to settle the additional claims not identified in her original PAGA charge. *Id*. ¶ 15.

On September 2, 2021, Judge Elihu Berle in Los Angeles Superior Court held a hearing on Plaintiff Rahman's petition to intervene. Judge Berle directed Plaintiff Diaz to file her

**Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement; Memo of Ps and As**
*Rahman, et al. v. Gate Gourmet, Inc., et al*                                                            **Case No. 4:20-cv-03047-WHO**
Page 3

proposed settlement agreement, directed the parties to submit supplemental briefing, and set a further hearing for October 15, 2021. *Id*. ¶ 16.

On September 16, 2021, Plaintiff Diaz filed a motion for preliminary approval for a settlement in the amount of $2,400,000. *Id*. ¶ 17.

On September 16 and 23, 2021, Plaintiff Rahman and Defendants respectively filed supplemental papers addressing the merits of the settlement, and Plaintiff Rahman's request for a stay in favor of the *Rahman* action. *Id*. ¶ 18.

On October 15, 2021, Judge Berle continued the hearing on Plaintiff Rahman's petition, ordered the parties to meet and confer regarding a global settlement, ordered Rahman to file supplemental briefing on a recent appellate decision, and ordered the parties to inquire with Judge Orrick in the *Rahman* action regarding his views of the propriety of staying the *Diaz* action. *Id*. ¶ 19.

On October 22, 2021, in the *Rahman* action, Plaintiff Rahman filed a noticed motion to lift the stay, which this Court granted. *Id*. ¶ 20.

On December 13, 2021, Judge Berle held the continued hearing on Plaintiff Rahman's petition to stay or intervene. Judge Berle ordered *Diaz* stayed in favor of the *Rahman* action. *Id*. ¶ 21.

Thereafter, Defendants and Plaintiff Diaz stipulated to a second removal of the *Diaz* action to the Central District, for transfer to this Court. While Plaintiff Rahman opposed that removal and sought remand, his objections were overruled, and the *Diaz* was transferred to this Court. *Id*. ¶ 22.

On March 9, 2022, a case management conference in the combined *Rahman/Diaz* proceedings was held and the parties informed the Court that a global mediation had been scheduled. *Id*. ¶ 23.

On April 26, 2022, a global mediation with the Plaintiffs in the *Rahman*, *Diaz*, and *Moore* actions and Defendants was held with Hunter Hughes, III. *Id*. ¶ 24.

On May 31, 2022, a case management conference in the combined *Rahman/Diaz* proceedings was held and the parties informed the Court that a settlement had been reached.  A

**Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement; Memo of Ps and As**
*Rahman, et al. v. Gate Gourmet, Inc., et al*                                    Case No. 4:20-cv-03047-WHO
Page 4

further case management conference was set for September 13, 2022. *Id*. ¶ 25.

On June 22, 2022, the parties filed a Stipulation and Proposed Order Re: Consolidated Complaint to consolidate all claims in the *Rahman*, *Diaz*, and *Moore* actions in this Court.  *Id*. ¶ 26.  The Court granted that motion on June 27, 2022. (ECF-60)

The *Moore* action was dismissed in the Central District on July 29, 2022.  *Id*. ¶ 27.

In the intervening time since informing the Court that the Action had settled, the Parties have negotiated and drafted the Settlement Agreement and its exhibits, including the Postcard Notice and Long Form Notice of Settlement.  *Id*. ¶ 28.

## IV.   MEDIATION

The global mediation of the *Rahman*, *Diaz*, and *Moore* actions occurred on April 26, 2022, with well-respected mediator Hunter Hughes, III. With the assistance of Mr. Hughes, who has vast experience mediating wage and hour disputes, counsel engaged in serious and arm's-length negotiations. *Id.* ¶ 29.

Ultimately, a mediator's proposal was made.  On May 12, 2022, the Parties accepted a mediator's proposal, which culminated in an agreement to settle for $3,850,000. *Id.* ¶ 30. After the agreement to settle, counsel for the Parties met and conferred extensively over the detailed terms of the settlement for purposes of finalizing a long-form Settlement Agreement and corresponding notice documents. *Id.* Several drafts and revisions were circulated in order to arrive at the final settlement. *Id.* The Settlement Agreement was fully executed on July 1, 2022. *Id.*

## V.   TERMS OF THE SETTLEMENT

### A.   Basic Terms and Value of the Settlement

Defendants have agreed to pay a non-reversionary Gross Settlement Amount of $3,850,000 to settle all aspects of the case. *Id.*, ¶ 32. The Net Settlement Amount is defined as the Gross Settlement Amount, less deductions for: Service Payment Awards to the Named Plaintiffs (not to exceed $7,500 each), attorney's fees to Class Counsel (not to exceed 33.33%, or $1,283,200.00), Class Counsel's litigation costs (not to exceed $56,000.00), administrative expenses to the Settlement Administrator, Atticus Administration ("Atticus"), (estimated at

**Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement; Memo of Ps and As**
*Rahman, et al. v. Gate Gourmet, Inc., et al*                                              Case No. 4:20-cv-03047-WHO
Page 5

$40,000.00), and payment to the Labor & Workforce Development Agency ("LWDA") for its 75% share of the PAGA penalties ($288,750.00).[1] *Id.*; Settlement Agreement ¶ 11(b).

The Gross Settlement Amount is a negotiated amount that resulted from substantial arms' length negotiations and significant investigation and analysis by Class Counsel. *Id.*, ¶ 33. Class Counsel based their damages analysis and settlement negotiations on the discovery propounded, including payroll and timekeeping data, and hired an expert to conduct a damages analysis for mediation. *Id.* Based on the analysis of the documents and data produced by Defendants, Plaintiffs made reasonable assumptions regarding the wage and hour violation rates, and resulting damages and potential penalties. *Id.*

Using these assumptions and further assuming that Plaintiffs and the Class Members would prevail on all claims at summary judgment and/or at trial, the maximum total amount of damages and penalties is broken down as follows:

The total amount for wages owed for preliminary and postliminary activities is approximately $11,289,441. *Id.*, ¶ 42.

The total mount for meal period violations is approximately $5,214,647. *Id.*, ¶ 43.

The total amount for rest period violations is approximately $521,464. *Id.*, ¶ 44.

Thus, the total amount of wage and break damages, if Plaintiffs were successful on all their claims is $17,025,552. *Id.*, ¶ 42.

During the statutory period, if the court were to find that Class Members suffered injury, Class counsel calculated 63 potential wage statement violations affecting each Class Member, resulting in maximum section 226 statutory penalties of $13,444,000. *Id.*, ¶ 46.

During the statutory period, if the court were to find that there was no good faith defense, waiting time penalties were calculated for 5,434 Class Members, resulting in maximum section 203 statutory penalties of $21,036,100. *Id.*, ¶ 47.

For PAGA penalties, the Court has discretion over the penalty amount to be awarded.

---

[1] The Parties agreed to allocate $385,000.00 of the Gross Settlement Amount to the settlement of the PAGA claims, which the Parties believe in good faith is a fair and reasonable apportionment. The Settlement Administrator shall pay 75%, or $288,750.00, of this amount to the LWDA, and 25% will remain as part of the Net Settlement Amount. *See,* Von Rock Dec. ¶ 32. The Net PAGA Settlement Amount is to be divided amongst all PAGA Aggrieved Employees by the number of work

Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement; Memo of Ps and As
*Rahman, et al. v. Gate Gourmet, Inc., et al*                                          Case No. 4:20-cv-03047-WHO
Page 6

However, Class Counsel calculated a likely exposure of approximately $18,000,000 for initial violations. *Id.*, ¶¶ 48-52.

Totaling these estimated substantive and derivative damages across the Settlement Class yields the total estimated damages amount for the entire action of approximately $69,505,652. *Id.*, ¶ 53.

However, the damages and penalties analysis above is Plaintiffs' best-case scenario. Gate Gourmet had formidable defenses that the postliminary and preliminary time spent by Class Members walking from the entrance of the facility to the time clocks was not under employer control. If the Court were to adopt Defendants' legal arguments, then Plaintiffs' claims would be limited to off the clock security searches of Class Members who worked at the SFO location for four months from January 2020 through April 2020 and at the LAX facility from February 2019 to the present, which would have affected 2,620 Class Members. *Id.*, ¶ 53. For the approximately 1,310 Class Members that worked at LAX during the time security searches were conducted, if assuming that every Class Member worked all 165 weeks between February 2019 through April 2022, this results in wages owed of $1.42 x 165 weeks x 1,310 Class Members = $306,933. *Id.*, ¶¶ 54-56.

Therefore, if the Court held that Class Members were not under Gate Gourmet's control during their ingress and egress time, Plaintiffs' wage claims would be limited to approximately $331,115. Plaintiffs' meal and rest break claims and derivative claims would also be drastically reduced. If these claims had the same percentage of reduction applied as the off-the-clock damages, it would result in meal break damages of $151,224; rest break damages of $15,122; wage statement penalties of $389,876; waiting time penalties of $610,046; and PAGA penalties of $522,000. Thus, assuming Plaintiffs were successful on their off-the-clock security search claims only, the damages and penalties exposure would be $2,019,383. *Id.*, ¶ 57.

Thus, the Gross Settlement Amount of $3,850,000 is substantially higher than the

weeks worked during the PAGA period. *Id.*

**Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement; Memo of Ps and As**
*Rahman, et al. v. Gate Gourmet, Inc., et al*                                          Case No. 4:20-cv-03047-WHO
Page 7

potential outcome if the case were limited to off-the-clock security search time and derivative claims only and represents a fair compromise given the risks presented for both sides.

The Settlement will result in immediate and certain payment to Class Members of meaningful amounts. *Id.*, ¶ 59. The average recovery is approximately $309 per Class Member (this amount divides the *net* Settlement Class recovery by total number of Class Members). *Id.* Additionally, $96,250 will be shared among approximately 3,361 PAGA Aggrieved Employees, which results in approximately $28 additional per PAGA Aggrieved Employee. *Id.* This amount provides significant compensation to the Class Members, and in light of all of the risks, the settlement amount is fair, reasonable, and adequate. *Id.*

### B.    Settlement Class Period

The Class Members are as defined as: All individuals employed at any Gate Gourmet facility in California as a non-exempt employee at any time from May 4, 2016 through the date of the preliminary approval of the settlement by the Court. *See,* Settlement Agreement at ¶ 9(b).  The Settlement Class Period is from May 4, 2016 through the date of preliminary approval. *Id.* at ¶ 9(c).  The PAGA Class Period is from May 5, 2019 through the date of preliminary approval. *Id.* at ¶ 9(g).

### C.    Allocation and Awards

The Net Settlement Amount to be paid to Class Members is approximately $2,159,550. *Id.* at ¶ 11(c). Class Members will receive a direct settlement award payment without the need to submit a claim form. *Id.*, ¶ 31.

The allocation is set forth as follows:  (1) Each Participating Class Member's number of Workweeks during the Class Period will be divided by the total number of Workweeks for all Participating Class Members during the Class Period, and the resulting figure will be multiplied by the Net Settlement Amount; and (2) for PAGA Aggrieved Employees, the Net PAGA Settlement Amount of $96,250 will be divided by the total number of Workweeks for all PAGA Aggrieved Employees during the PAGA Period, and the resulting figure will be multiplied by the Net PAGA Settlement Amount. *Id.*, ¶ 12.

Class Members will have 60 days to exclude themselves from the settlement or object to

**Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement; Memo of Ps and As**
*Rahman, et al. v. Gate Gourmet, Inc., et al*                                                    **Case No. 4:20-cv-03047-WHO**
Page 8

1    the settlement and motion for attorney's fees and costs. *Id.*, ¶¶ 32, 33.

2        Class Members will have an option to choose a digital payment or a hard copy check.

3    *See,* Settlement Agreement, ¶ 31.  If a Class Member does not affirmatively choose a digital

4    payment, a hard copy check will be mailed.  *Id.* The digital payment options will include E-

5    Mastercard, Paypal, and Venmo. Class members will have one hundred eighty (180) calendar

6    days to activate their digital payment.  *Id.*

7        All settlement checks will be valid for one hundred eighty (180) calendar days. At the

8    end of the 180-day period, settlement checks will be canceled, and digital payments not

9    activated will be combined with the uncashed settlement checks. *Id.*

10        If the total residual amount of uncashed settlement checks and non-activated digital

11    payments is less than $50,000.00, then the amount will revert to *cy près*. *See,* Settlement

12    Agreement ¶ 31(d)(i). The Parties propose that the *cy près* recipient be Open Door Legal,

13    which provides legal services assisting low-income, working families and promotes better

14    understanding of the conditions, policies, and institutions that affect the well-being of workers

15    and their families and communities. *See,* Von Rock Dec. ¶ 34; Settlement Agreement ¶

16    31(d)(i).

17        If the total residual amount is $50,000.00 or greater, a second distribution will occur to

18    those Class Members who cashed their Settlement Award checks and activated their digital

19    payments. *See,* Von Rock Dec. ¶ 35; Settlement Agreement, ¶ 31(d)(ii). Any residual funds

20    uncashed after the second distribution will revert to the *cy près* recipient. *Id.*

21        D.    Timeline

22        The proposed timeline is set forth in the [Proposed] Order and Von Rock Declaration.

23        E.    Scope of Release

24        Upon the Final Approval by the Court, and subject to the exclusions described below,

25    each Class Member fully releases all claims that were raised in the litigation and all claims that

26    could have been brought based on the facts alleged in the Consolidated Complaint. *See,* Von

27    Rock Dec. ¶ 36; Settlement Agreement ¶ 35. Plaintiffs Rahman, Bautista-Diaz, and Moore also

28    agree to a general release from all known and unknown claims they may have against the

**Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement; Memo of Ps and As**
*Rahman, et al. v. Gate Gourmet, Inc., et al*                                    Case No. 4:20-cv-03047-WHO
Page 9

Released Parties. Settlement Agreement ¶ 36.

F.     Settlement Administration

Plaintiffs obtained quotes for settlement administration from three established administration firms. The parties have agreed to use Atticus Administration ("Atticus") to administer the Settlement.  Class Counsel have successfully used Atticus in several recent class actions. *See,* Von Rock Dec., ¶ 60.

Atticus provided a competitive bid for the services offered of total fees and costs currently estimated at $40,000.00. *Id.*  Atticus will distribute the Postcard Notices of Settlement via U.S. mail and email, re-mail any Postcard Notices returned as non-deliverable but with forwarding addresses, and re-mail the Notice to any new address obtained by way of skip-trace. *Id.*, ¶ 61; Settlement Agreement ¶ 26(b). Atticus will also receive and process workweek disputes, calculate the settlement payments, calculate all applicable payroll taxes, withholdings, and deductions; and prepare and issue all disbursements to Class Members, Service Awards to Plaintiffs, payment to the LWDA payment, payment to Class Counsel for fees and costs, and payment to itself for fees in administering the settlement. *Id.*; Settlement Agreement ¶ 26.

Atticus will also create a website for the Settlement which will allow Class Members to view the Class Notice in substantially the form attached as **"Exhibit A"** to the Settlement Agreement, the Settlement Agreement, Plaintiffs' preliminary and final approval motions, and payment options. *Id.*; Settlement Agreement ¶ 26(c). The Settlement Administrator will also establish a toll-free call center for inquiries from Class Members. *Id.*

G.     Payment Options

Class Members will have the option to receive their settlement amount in a digital form, through a prepaid E-Mastercard, or electronically with a Paypal or Venmo account. These digital payment options provide more flexibility and provide a substantial benefit to Class Members who do not have traditional bank accounts. The Settlement Administrator will have a secure link on the settlement website for Class Members to submit a request for a digital

**Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement; Memo of Ps and As**
*Rahman, et al. v. Gate Gourmet, Inc., et al*                                                    Case No. 4:20-cv-03047-WHO
Page 10

payment option. See, Von Rock Dec. ¶ 63. If a Class Member does not submit a request for a digital payment option, the Settlement Administrator will mail a check to the Class Member.

## VI.    LEGAL DISCUSSION

### A.    The Court Should Grant Preliminary Approval of the Settlement

A certified class action may only be settled with court approval. *See,* Fed.R.Civ.P. 23(e). Court approval of a class action settlement requires three steps: (1) preliminary approval of the proposed settlement upon a written motion; (2) dissemination of notice of the settlement to all class members; and (3) a final settlement approval hearing at which objecting class members may be heard, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented. Manual for Complex Litigation, *Judicial Role in Reviewing a Proposed Class Action Settlement*, § 21.61 (4th ed. 2004). The decision to approve or reject a proposed settlement is committed to the sound discretion of the court. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). Rule 23 requires that all class action settlements satisfy two primary prerequisites before a court may grant certification for purposes of preliminary approval: (1) that the settlement class meets the requirements for class certification if it has not yet been certified; and (2) that the settlement is fair, reasonable, and adequate. Fed.R.Civ.P. 23(a), (e)(2); *Hanlon*, 150 F.3d at 1020. As discussed below, this class action settlement satisfies the requirements of Rule 23(a) and (b), and it is fair, reasonable, and adequate in accordance with Rule 23(e)(2). *See,* Von Rock Dec., ¶ 51. Accordingly, the Court should preliminarily approve the Settlement. *Id.*

### B.    The Court Should Certify the Settlement Class

A class may be certified under Rule 23 if (1) the class is so numerous that joinder of all members individually is "impracticable"; (2) questions of law or fact are common to the class; (3) the claims or defenses of the class representative are typical of the claims or defenses of the class; and (4) the person representing the class is able to fairly and adequately protect the interests of all members of the class. Fed.R.Civ.P. 23(a). Furthermore, Rule 23(b)(3) provides that a class action seeking monetary relief may only be maintained if "the court finds that the

**Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement; Memo of Ps and As**
*Rahman, et al. v. Gate Gourmet, Inc., et al*                                    Case No. 4:20-cv-03047-WHO
Page 11

questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). Applying this standard, numerous cases similar to this case have certified classes of employees who have suffered wage and hour violations under California wage and hour laws.[2] Likewise, Plaintiffs contend that the Settlement Class meets all of these requirements.

### 1. The Class Members are numerous and ascertainable.

The numerosity prerequisite demands that a class be large enough that joinder of all members would be impracticable. Fed.R.Civ.P. 23(a)(1). Courts routinely find numerosity satisfied with classes of at least forty members. *See, e.g., Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988); *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 485 (E.D. Cal. 2006). The approximately 7,000 Class Members render the class so large as to make joinder impracticable. *See*, Von Rock Dec., ¶ 67. The Class Members are readily identifiable from Defendants' payroll records. *Id*.

### 2. Plaintiffs' claims raise common issues of fact or law.

The commonality requirement of Rule 23(a)(2) "is met if there is at least one common question or law or fact." *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 467 (E.D. Pa. 2000). Plaintiffs "need not show that every question in the case, or even a preponderance of questions, is capable of classwide resolution." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013). "[E]ven a single common question" can satisfy the commonality requirement of Rule 23(a)(2). *Id*.

Plaintiffs contend that common questions of law and fact predominate here. The wage and hour violations at issue are borne of Defendants' standardized policies, practices, and procedures regarding preliminary and postliminary activities that Defendants impose, creating pervasive issues of fact and law that are amenable to resolution on a class-wide basis. *See, Von*

---

[2] *See, e.g., Caudle v. Sprint/United Mgmt. Co.,* No. C 17-06874 WHA, 2018 WL 6618280, at *7 (N.D. Cal. Dec. 18, 2018) (certifying California Rule 23 class in a case asserting policy-driven wage violations); *Shaw v. AMN Healthcare, Inc.*, 326 F.R.D. 247, 275 (N.D. Cal. 2018) (certifying California Rule 23 class in a case asserting policy-driven off-the-clock,

Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement; Memo of Ps and As
*Rahman, et al. v. Gate Gourmet, Inc., et al*                                        Case No. 4:20-cv-03047-WHO
Page 12

Rock Dec., ¶ 68. Class Members are subject to the same: timekeeping, payroll, compensation, preliminary and postliminary activities, and meal and rest period policies and practices. *Id*. Plaintiffs' other derivative claims will rise or fall with the primary claims. *Id*. Because these questions can be resolved at the same juncture, Plaintiffs contend the commonality requirement is satisfied for the Class. *Id*.

### 3. Plaintiffs' claims are typical of the claims of the Class.

"Rule 23(a)(3) requires that the claims of the named parties be typical of the claims of the members of the class." *Fry*, 198 F.R.D. at 468. "[A] representative's claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Here, Plaintiffs contend that their claims are typical of those of all other Class Members. *See,* Von Rock Dec., ¶¶ 68-71. They were subject to the alleged illegal policies and practices that form the basis of the claims asserted in this case. *Id.* Interviews with Class Members and review of documents and data confirm that the employees throughout California were subjected to the same alleged illegal policies and practices to which Plaintiffs were subjected. *Id.*, ¶ 70. Thus, Plaintiffs contend that the typicality requirement is also satisfied. *Id.*

### 4. Plaintiffs and Class Counsel will adequately represent the Class.

To meet the adequacy of representation requirement in Rule 23(a)(4), Plaintiffs must show "(1) that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously; (2) that he or she has obtained adequate counsel, and (3) that there is no conflict between the individual's claims and those asserted on behalf of the class." *Fry*, 198 F.R.D. at 469. Plaintiffs' claims are in line with the claims of the Class Members, and Plaintiffs' claims are not antagonistic to the claims of Class Members. *See,* Rahman Dec., ¶¶ 4-8; Bautista-Diaz Dec., ¶¶ 7-18; Moore Dec. ¶¶ 2-5. Plaintiffs have prosecuted this case with the interests of the Class Members in mind. *Id.* Moreover, Class Counsel has extensive experience in class action and employment litigation, including wage and hour class actions,

overtime, and meal and rest break violations, in joint employment context).

**Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement; Memo of Ps and As**
*Rahman, et al. v. Gate Gourmet, Inc., et al*                                    Case No. 4:20-cv-03047-WHO
Page 13

and do not have any conflict with the Class. *See,* Von Rock Dec., ¶ 77; Huether Dec. ¶ 18; Moon Dec. ¶¶ 15-13.

### 5.  The Rule 23(b)(3) requirements for class certification are met.

Under Rule 23(b)(3), Plaintiffs must demonstrate that common questions "predominate over any questions affecting only individual members" and that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." "The predominance analysis under Rule 23(b)(3) focuses on 'the relationship between the common and individual issues' in the case and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Wang,* 737 F.3d at 545.

Here, Plaintiffs contend the common questions raised in this action predominate over any individualized questions concerning the Class Members. The Class is entirely cohesive because resolution of Plaintiffs' claims hinge on the uniform policies and practices of Defendants, rather than the treatment the Class Members experienced on an individual level. *Id.* Namely, the predominate questions relate to whether Class Members are entitled to be compensated for the time spent during preliminary and postliminary activities and meal and rest periods.  As a result, Plaintiffs contend that the resolution of these alleged class claims would be achieved through the use of common forms of proof, such as Defendants' policies, and would not require inquiries specific to individual Class Members.[3]

Further, Plaintiffs contend that the class action mechanism is a superior method of adjudication compared to a multitude of individual suits. To determine whether the class approach is superior, courts are to consider: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the

---

[3] Although the amount of time worked off-the-clock during preliminary and postliminary activities and number of missed meal and rest periods may vary, these are damages questions and should not impact class certification. *Yokoyama v. Midland Nat. Life Ins. Co*., 594 F.3d 1087, 1094 (9th Cir. 2010). The fact that individual inquiry might be necessary to determine whether individual employees were able to take breaks despite the Defendant's allegedly unlawful policy is not a proper basis for denying certification. *Benton v. Telecom Network Specialists, Inc.*, 220 Cal.App.4th 701 (Cal. Ct. App. 2014).

Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement; Memo of Ps and As
*Rahman, et al. v. Gate Gourmet, Inc., et al*                                    Case No. 4:20-cv-03047-WHO
Page 14

desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Fed.R.Civ.P. 23(b)(3)(A)-(D).

Here, the Class Members do not have a strong interest in controlling their individual claims. The action involves thousands of workers with very similar, but relatively small, claims for monetary injury.  If the Class Members proceeded on their claims as individuals, their many individual suits would require duplicative discovery and duplicative litigation, and each Class Member would have to personally participate in the litigation effort to an extent that would never be required in a class proceeding. Thus, Plaintiffs contend that the class action mechanism would efficiently resolve numerous substantially identical claims while avoiding a waste of judicial resources and eliminating the possibility of conflicting decisions from repetitious litigation and arbitrations.

The Settlement presented by the Parties provides finality, ensures that workers receive redress for their relatively modest claims, and avoids clogging the legal system with numerous cases.  Accordingly, class treatment is efficient and warranted, and the Court should conditionally certify the Class for settlement purposes.

C.    The Settlement Should Be Preliminarily Approved Because It Is Fair, Reasonable, and Adequate

In deciding whether to approve a proposed class settlement, the Court must find that the proposed settlement is "fair, reasonable, and adequate." Fed.R.Civ.P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Lynn's Food Stores*, 679 F.2d at 1354-55; *Otey*, 2015 WL 6091741, at \*4. Included in this analysis are considerations of: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. *Churchill Village, LLC. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026). Importantly, courts apply a presumption of fairness, where, as is the case here, "the settlement is recommended by class counsel after

**Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement; Memo of Ps and As**
*Rahman, et al. v. Gate Gourmet, Inc., et al*                                                    Case No. 4:20-cv-03047-WHO
Page 15

arm's-length bargaining." *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011). There is also "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). In light of these factors, the proposed settlement is fair, reasonable, and adequate.

> ### 1. The Strength of Plaintiff's Case; the Risk, Expense, Complexity, and Likely Duration of Further Litigation; and the Risk of Maintaining Class-Action Status Throughout Trial.

Weighing the significant risks associated with further litigation against the strengths of Plaintiffs' case supports approval of the Settlement here. When a party continues to deny liability, there is an inherent risk in continuing litigation. Getting the case certified and litigating the class action claims, here, would require substantial additional preparation and resources. *See,* Von Rock Dec. ¶ 72.  Plaintiffs alleged that employees were subject to Defendants' control because the building layouts for the airports and warehouses are spread out, the time clocks were not at the entry, but rather distant from the turnstiles and, thus, employees were required to walk from the entry turnstiles to their posts to clock in and out, and some employees were required to don and doff uniforms and/or safety equipment, had to go to their lockers to store items or retrieve uniforms and equipment, and were submitted to searches.  *Id*.  Defendants countered that Plaintiffs' claims for preliminary and postliminary activities would fail because the time spent between entering the facility and clocking in, or conversely, clocking out and exiting the facility was not time under the employer's control.  *Id*. Further, Defendants argued that there would be manageability issues to determine the amount of time during these preliminary and postliminary activities which might be considered under employer control or not, thus defeating class certification. *Id*.  If the Court had sided with Defendants on either of those defenses, Class Members may not receive any compensation.  *Id*.

While Plaintiffs are confident in their ability to successfully litigate the alleged claims on the merits, the risks of doing so are substantial. In *Thieriot v. Celtic Ins. Co.*, No. C 10-04462 LB, 2011 U.S.Dist.LEXIS 44852, at *5 (N.D. Cal. April 21, 2011), the court approved a settlement agreement in which the defendant specifically denied liability, noting that such

**Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement; Memo of Ps and As**
*Rahman, et al. v. Gate Gourmet, Inc., et al*                                    **Case No. 4:20-cv-03047-WHO**
Page 16

denial of liability illustrated the risk to continued litigation. *See also, Greko v. Diesel U.S.A., Inc*. No. 10-cv-02576 NC, 2013 WL 1789602, at *5 (N.D. Cal. April 26, 2013) ("[E]ven with a strong case, further litigation would be time-consuming and expensive …). Here, Defendants similarly continue to contest liability and the propriety of class certification, injecting uncertainty and risk in continuing to litigate.

Resolving this case by means of the Settlement will yield a prompt, certain, and substantial recovery for the Class Members. Such a result will benefit the Parties and the court. It will bring finality to years of arduous litigation and will foreclose the possibility of expanding litigation.

### 2. The Amount Offered in Settlement Provides Substantial, Certain Benefits and Avoids the Risk, Cost, Delay and Burden of Further Litigation.

The Settlement is substantial, especially as its adequacy must be judged as "a yielding of absolutes and an abandoning of highest hopes […]  Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation[.]" *Officers for Justice*, 688 F.2d at 624 (citations omitted). Accordingly, the "settlement is not to be judged against a […] speculative measure of what might have been achieved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (emphasis in original, citation omitted). In the end, "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027. In addition, the Court should consider that the Settlement provides for payment to the Class now, rather than a speculative payment many years down the road. *See generally, City of Detroit v. Grinnell Corp*., 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

Here, the value of the Settlement – $3,850,000 – is not only fair and reasonable, but an exceptional result, especially in light of the initial settlement offered by Defendants in the *Bautista-Diaz* action of $2,400,000. *See,* Von Rock Dec., ¶ 73. Moreover, the Settlement

Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement; Memo of Ps and As
*Rahman, et al. v. Gate Gourmet, Inc., et al*                                        Case No. 4:20-cv-03047-WHO
Page 17

amount represents a meaningful recovery for Class Members. *See., e.g., Jiangchen v. Rentech, Inc.,* No. CV 17-1490-GW(FFMx)) 2019 U.S.Dist.LEXIS 180474 (C.D.Cal. Oct. 10, 2019), at *21 (finding 10% recovery of the total maximum damages potentially available reasonable in light of the risks of continued litigation). The negotiated non-reversionary Gross Settlement Amount of $3,850,000 represents 23% of the wage and break violations calculated ($17,025,552) and is significantly higher than the $2,019,383 calculated if Plaintiffs were limited only to their security search claims. *See,* Von Rock Dec., ¶ 73.

### 3. The Extent of Discovery Completed and the Stage of the Proceedings.

The amount of discovery completed prior to reaching a settlement is important because it bears on whether the Parties and the Court have sufficient information before them to assess the merits of the claims. *See, e.g.*, *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 617, 625 (N.D. Cal. 1979); *Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008). Informal discovery may also assist parties with "form[ing] a clear view of the strengths and weaknesses of their cases." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013).

The Parties engaged in extensive discovery that has enabled both sides to assess the claims and potential defenses in this action, including formal and informal written discovery. *See*, Von Rock Dec., ¶¶ 4-8. This allowed the Parties to accurately assess the legal and factual issues that would arise if the case proceeded to trial. *Id*. In addition, in reaching this Settlement, Class Counsel relied on their substantial litigation experience in similar wage and hour class actions. Class Counsel's liability and damages evaluation was premised on a careful and extensive analysis of the effects of Defendants' compensation policies and practices on Class Members' pay. *Id*., ¶¶ 6-7. Further, Plaintiffs engaged an expert to calculate the damages and penalties analysis for mediation using Defendants' records. *Id*. Ultimately, facilitated by mediator Hunter Hughes III, the Parties used this information and discovery to fairly resolve the litigation. *Id*., ¶ 8.

### 4. The Experience and Views of Counsel.

The judgment of experienced counsel regarding the settlement is entitled to great weight. *Hanlon*, 150 F.3d at 1026; *Boyd*, 485 F.Supp. at 622; *Ellis*, 87 F.R.D. at 18. Reliance

**Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement; Memo of Ps and As**
*Rahman, et al. v. Gate Gourmet, Inc., et al*                                                    **Case No. 4:20-cv-03047-WHO**
Page 18

on such recommendations is premised on the fact that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).

Here, all parties agreed that the Settlement was fair, adequate, and reasonable. Plaintiffs' Counsel and Defendants' Counsel each have extensive experience in prosecuting and litigating class action wage-and-hour suits like this one. *See,* Von Rock Dec., ¶ 77, Ex. 2; Moon Dec. ¶¶ 15-34; Huether Dec. ¶¶ 3-7.  The fact that qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate heavily favors this Court's preliminary approval.

### 5.    The Presence of a Government Participant.

If the settlement is preliminarily approved, Defendants will provide Notice pursuant to Section 1715(b) of the Class Action Fairness Act of 2005 ("CAFA"), which states that "each defendant that is participating in the proposed settlement shall serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official, a notice of the proposed settlement....." 28 U.S.C. § 1715(b).

In addition, Plaintiffs will submit the proposed settlement to the LWDA through its online portal.

### 6.    Class Members' Response to the Settlement.

At final approval, Plaintiffs will inform the Court of any exclusions or objections to the settlement.

### 7.    The Settlement is the product of informed, non-collusive, and arm's-length negotiations between experienced counsel.

Courts routinely presume a settlement is fair where it is reached through arm's-length bargaining. *See Hanlon*, 150 F.3d at 1027; *Wren*, 2011 WL 1230826, at *14. Furthermore, where counsel are well-qualified to represent the proposed class in a settlement based on their extensive class action experience and familiarity with the strengths and weaknesses of the action, courts find this factor to support a finding of fairness. *Wren*, 2011 WL 1230826, at *10; *Carter v. Anderson Merchandisers, LP*, No. EDCV 08-0025-VAP OPX, 2010 WL 1946784, at

**Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement; Memo of Ps and As**
*Rahman, et al. v. Gate Gourmet, Inc., et al*                                    Case No. 4:20-cv-03047-WHO
Page 19

*8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight.").

Here, the settlement was a product of non-collusive, arm's-length negotiations. *See,* Von Rock Dec., ¶ 31. The litigious procedural history of this consolidated action further confirms the non-collusive nature of the settlement.  Plaintiff Rahman sought to intervene in the *Bautista-Diaz* action and objected to the settlement reached in the *Bautista-Diaz* action, which was valued at $2,400,000. *Id.*  The global resolution of this consolidated action adds another $1,485,000 in funds to the settlement. *Id.*

The Parties participated in a lengthy mediation session before Hunter Hughes, III, a skilled mediator with many years of experience mediating employment matters. *Id.,* ¶ 29. The Parties then spent several weeks discussing settlement and negotiating the settlement agreement, with several rounds of edits related to the terms of the Settlement. *Id.*  Plaintiffs are represented by experienced class action litigators who feel strongly that the proposed Settlement achieves an excellent result for the Class Members.

### 8.    The Service Awards to Representative Plaintiffs are Reasonable.

Named plaintiffs in class action litigation are eligible for reasonable service awards. *See Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).[4]  The service payments of up to $7,500 for Plaintiffs are intended to compensate them for the critical role they played in this case, and the time, effort, and risks undertaken in helping secure the result obtained on behalf of the Class Members. *See,* Von Rock Dec., ¶¶ 74-75; Rahman Dec., ¶¶ 4-23; Moon Dec., ¶¶ 4-7; Moore Dec., ¶¶ 4-5. In agreeing to serve as Class representatives, these individuals formally agreed to accept the responsibilities of representing the interests of all Class Members. *See,* Von Rock Dec., ¶ 74. Defendants do not oppose the requested payments to these representatives as reasonable service awards and in consideration of the full releases given by Plaintiffs. *Id.*

Moreover, the enhancement payments are fair when compared to the payments approved in similar cases. *See, e.g.*, *Soto, et al. v. O.C. Communications, Inc., et al.*, Case No.

---

[4] "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (named plaintiff received $50,000 for work in class action).

Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement; Memo of Ps and As
*Rahman, et al. v. Gate Gourmet, Inc., et al*                                                              Case No. 4:20-cv-03047-WHO
Page 20

3:17-cv-00251-VC, ECF 304 (N.D. Cal. Oct. 23, 2019) (approving $15,000 and $10,000 service awards in recent hybrid FLSA/Rule 23 settlement); *Guilbaud v. Sprint/United Management Co., Inc.,* No. 3:13-cv-04357-VC, Dkt. No. 181 (N.D. Cal. Apr. 15, 2016) (approving $10,000 service payments for each class representative in FLSA and California state law representative wage and hour action); *Van Liew v. North Star Emergency Services, Inc., et al.*, No. RG17876878 (Alameda Cty. Super. Ct., Dec. 11, 2018) (approving $15,000 and $10,000 service awards, respectively, to class representatives in California Labor Code wage and hour class action).

### 9.   The Requested Attorneys' Fees and Costs are Reasonable

In their fee motion to be submitted with the final approval papers, Class Counsel will request a percentage of the common fund, up to 33.33% of the Gross Settlement Amount, or $1,283,200.00, plus reimbursement of costs up to $56,000. *See,* Von Rock Dec., ¶ 78. Currently, the lodestar of all Plaintiffs' counsel is $1,184,106, which accounts for a current multiplier of 1.08. *Id.,* ¶¶ 79-90; *see also,* Huether Dec., ¶¶ 9-16; Moon Dec., ¶ 10. At final approval, Class Counsel will provide detailed lodestar information to show the requested fee is reasonable under both the percentage method and a lodestar "cross-check."

When a district court exercises diversity jurisdiction over a case consisting of exclusively California claims, as here, California substantive law applies to the calculation of the attorney fee award. *See, Mangold v. Cal. Pub. Utils. Comm'n,* 67 F.3d 1470, 1478-1479 (9th Cir. 1995) (finding state law to be applicable in "in determining not only the right to fees, but also the method of calculating the fees."); *see also, Rodriguez v. Disner*, 688 F.3d 645, 653 fn. 6 (9th Cir. 2012) ("If … we were exercising our diversity jurisdiction, state law would control whether an attorney is entitled to fees and the method of calculating such fees"); *Gonzalez v. Southern Wine & Spirits of Am., Inc.*, 555 Fed.Appx. 704, 704-705 (9th Cir. 2014) (finding district court abused its discretion in applying federal law instead of California substantive law to the calculation of attorneys' fees, holding that, because the court exercised diversity jurisdiction, California substantive law should have been applied).

**Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement; Memo of Ps and As**
*Rahman, et al. v. Gate Gourmet, Inc., et al*                                              Case No. 4:20-cv-03047-WHO
Page 21

Here, Plaintiffs' claims arise exclusively from California law.  Accordingly, the Court should apply the method for calculating attorney's fees as set forth by California jurisprudence. *See, e.g., Laffitte v. Robert Half International, Inc.,* 1 Cal.5th 480, 503-506 (2016) (percentage method with a lodestar crosscheck is appropriate in common fund cases).  Furthermore, use of the percentage method in common fund cases appears to be dominant in the Ninth Circuit. *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir.); *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). The advantages of using the percentage method have been described thoroughly by other courts. *See, e.g., In re Activision Sec. Litig.*, 723 F.Supp. 1373, 1374-77 (N.D. Cal. 1989) (collecting authority and describing benefits of the percentage method over the lodestar method).

At final approval, Plaintiffs will present the factors that district courts in the Ninth Circuit normally consider in awarding attorney's fees, including: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases. *See,* Vizcaino, 290 F.3d at 1048-50.  These factors support the requested fees award.

The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark. *Vasquez v. Coast Valley Roofing*, 266 F.R.D. 482, 491-492 (E.D. Cal. 2010) (citing *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)); *Hanlon*, 150 F.3d at 1029; *Staton*, 327 F.3d at 952. However, the exact percentage varies depending on the facts of the case, and in "most common fund cases, the award exceeds that benchmark." *Id.* (citing *Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. 2009); *In re Activision Sec. Litig.*, 723 F.Supp. 1373, 1377-78 (N.D. Cal. 1989) ("nearly all common fund awards range around 30%")). In California, federal and state courts have customarily approved payments of attorneys' fees amounting to one-third of the common fund in comparable wage and hour class actions. *See, e.g., Soto, et al. v. O.C. Communications, Inc., et al.*, Case No. 3:17-cv-00251-VC, ECF 304 (N.D. Cal. Oct. 23, 2019) (approving attorneys' fees of one-third of the gross settlement in recent hybrid FLSA/Rule 23 settlement); *Regino Primitivo Gomez, et al. v. H&R Gunlund Ranches, Inc.*, No. CV F 10–1163 LJO MJS,

Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement; Memo of Ps and As
*Rahman, et al. v. Gate Gourmet, Inc., et al*                                    Case No. 4:20-cv-03047-WHO
Page 22

2011 WL 5884224 (E.D. Cal. 2011) (approving attorneys' fees award equal to 45% of the settlement fund); *Wren,* 2011 WL 1230826 (approving attorneys' fee award of just under 42% of common fund).

In this case, given the excellent results achieved and the effort expended litigating the Actions, such an upward adjustment from the benchmark is warranted. *See,* Von Rock Dec., ¶ 91. There was no guarantee of compensation or reimbursement. *Id.* Rather, counsel undertook all the risks of this litigation on a completely contingent fee basis. *Id.* These risks were front and center. *Id.* Defendants' vigorous and skillful defense further confronted Class Counsel with the prospect of recovering nothing or close to nothing for their commitment to and investment in the case. *Id.*

Nevertheless, Plaintiffs and Class Counsel committed themselves to developing and pressing Plaintiffs' legal claims to enforce the employees' rights and maximize the class recovery. *Id.,* ¶ 92. During the litigation, counsel had to turn away other less risky cases to remain sufficiently resourced for this one. *Id.* The challenges that Class Counsel had to confront and the risks they had to fully absorb on behalf of the class here are precisely the reasons for multipliers in contingency fee cases. *See, e.g.*, *Noyes v. Kelly Servs., Inc.,* 2:02-CV-2685-GEB-CMK, 2008 WL 3154681 (E.D. Cal. Aug. 4, 2008); Posner, Economic Analysis of the Law, 534, 567 (4th ed. 1992) ("A contingent fee must be higher than a fee for the same legal services paid as they are performed… because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans").

Attorneys who litigate on a wholly or partially contingent basis expect to receive significantly higher effective hourly rates in cases where compensation is contingent on success, particularly in hard-fought cases where, like in the case at bar, the result is uncertain. *See,* Von Rock Decl., ¶ 93. This does not result in any windfall or undue bonus. *Id.* In the legal marketplace, a lawyer who assumes a significant financial risk on behalf of a client rightfully expects that his or her compensation will be significantly greater than if no risk was involved (*i.e.,* if the client paid the bill on a monthly basis), and that the greater the risk, the greater the

**Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement; Memo of Ps As**
*Rahman, et al. v. Gate Gourmet, Inc., et al*                                                    **Case No. 4:20-cv-03047-WHO**
Page 23

"enhancement." *Id.* Adjusting court-awarded fees upward in contingent fee cases to reflect the risk of recovering no compensation whatsoever for hundreds of hours of labor simply makes those fee awards consistent with the legal marketplace, and in so doing, helps to ensure that meritorious cases will be brought to enforce important public interest policies and that clients who have meritorious claims will be better able to obtain qualified counsel. *Id.*

The amount of fees and costs requested are clearly set forth in the Notice. Accordingly, Plaintiffs respectfully request the Court preliminarily approve the terms of the settlement, including the request for fees and costs. Any objections by Class Members to the request for fees and costs may be considered by the Court at final approval.

### 10. The Proposed Notice of Settlement and Claims Process Are Reasonable

The Court must ensure that Class Members receive the best notice practicable under the circumstances of the case. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974). Procedural due process does not guarantee any particular procedure but rather requires only notice reasonably calculated "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994). A settlement notice "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Village LLC*, 361 F.3d at 575.

The Notice of Settlement, attached as **Exhibits A and B** to the Settlement Agreement, is "the best notice practicable." *See*, Von Rock Dec., ¶¶ 62-66; Fed.R.Civ.P. 23(c)(2)(B). All Class Members have been identified and the Notice of Settlement will be mailed directly to each Class Member, and emailed to those for whom Defendants have an email address. *Id.* The proposed Notice is clear and straight forward, and provides information on the nature of the action and the proposed settlement, the terms and provisions of the Settlement Agreement, and the monetary awards that the Settlement will provide Class Members. *Id.* In addition, the Parties will provide a settlement website that provides a generic form of the Notice, the

Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement; Memo of Ps and As
*Rahman, et al. v. Gate Gourmet, Inc., et al*                    Case No. 4:20-cv-03047-WHO
Page 24

Settlement Agreement, and other case related documents and contact information. *Id*.

The proposed Notice fulfills the requirement of neutrality in class notices. *Id*., ¶ 65; *See* Conte, Newberg on Class Actions, § 8.39 (3rd Ed. 1992). It summarizes the proceedings necessary to provide context for the Settlement Agreement and summarizes the terms and conditions of the Settlement, including an explanation of how the settlement amount will be allocated between the Named Plaintiffs, Class Counsel, the Settlement Administrator, and the Class Members, in an informative, coherent and easy-to-understand manner, all in compliance with the Manual for Complex Litigation's recommendation that "the notice contain a clear, accurate description of the terms of the settlement." *See,* Von Rock Dec., ¶ 94; Manual for Complex Litigation, Settlement Notice, § 21.312 (4th ed. 2004).

The Notice of Settlement clearly explains the procedures and deadlines for requesting exclusion from the Settlement and objecting to the Settlement, as well as the consequences of taking or foregoing the various options available to Class Members, and the date, time and place of the Final Approval Hearing. *See,* Von Rock Dec., ¶¶ 64-66. Pursuant to Rule 23(h), the proposed Notice of Settlement also sets forth the amount of attorneys' fees and costs sought by Plaintiffs, as well as an explanation of the procedure by which Class Counsel will apply for them. *Id.* The Notice of Settlement clearly states that the Settlement does not constitute an admission of liability by Defendants. *Id.*, ¶ 65. Accordingly, the Notice of Settlement complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. *See* Conte, Newberg on Class Actions, §§ 8.21 and 8.39 (3rd Ed. 1992); Manual for Complex Litigation, Certification Notice, § 21.311; Settlement Notice, § 21.312 (4th ed. 2004).

Class Members will have 60 days from the mailing of the Notice of Settlement to request exclusion or object to the Settlement. *Id.*, ¶ 66. Any Class Member who does not submit a timely request to exclude themselves from the Settlement will be deemed a Participating Class Member. *Id.* At least 10 days prior to the final approval hearing, the Administrator shall provide the Court with a declaration of due diligence and proof of mailing with regard to the mailing of the Notice Packet, and all attempts to locate Class Members. *Id.*

**Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement; Memo of Ps and As**
*Rahman, et al. v. Gate Gourmet, Inc., et al*                                   Case No. 4:20-cv-03047-WHO
Page 25

Because the proposed Notice of Settlement clearly and concisely describes the terms of the Settlement and the awards and obligations for Class Members who participate, and because the Notice will be disseminated in a way calculated to provide notice to as many Class Members as possible, the Notice of Settlement should be preliminarily approved.

### D.    The Court Should Approve the Proposed Schedule

The last step in the settlement approval process is to hold a Final Approval Hearing at which the court will hear argument and make a final decision about whether to approve the Settlement pursuant to Rule 23(e)(3). *See*, Manual for Complex Litigation, *supra*, at §21.63. Plaintiffs have submitted a proposed order setting forth the proposed schedule of events from here through final approval. *See,* Von Rock Dec., ¶ 93 and [Proposed] Order. Plaintiffs submit that the proposed schedule complies with Rule 23 and secures the benefits for Class Members in a timely fashion.

## VII.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant preliminary approval of the Settlement Agreement in accordance with the proposed schedule.

Dated:  August 16, 2022          AIMAN-SMITH & MARCY

/s/ Hallie Von Rock

_____
Hallie Von Rock
Attorneys for Plaintiff Mohammed Rahman

Dated:  August 16, 2022          MOON & YANG

/s/ Kane Moon

_____
KANE MOON
ALLEN FEGHALI
Attorneys for Plaintiff Alicia Noemi Bautista Diaz

**Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement; Memo of Ps and As**
*Rahman, et al. v. Gate Gourmet, Inc., et al*                    **Case No. 4:20-cv-03047-WHO**
Page 26

Dated:  August 16, 2022                    LAVI & EBRAHIMIAN

                                           /s/ Melissa Huether

                                           _____
                                           JOSEPH LAVI
                                           VINCENT GRANBERRY
                                           MELISSA A. HUETHER
                                           Attorneys for Plaintiff Pascal Moore

**Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement; Memo of Ps and As**
*Rahman, et al. v. Gate Gourmet, Inc., et al*                                    Case No. 4:20-cv-03047-WHO
Page 27