1

**AIMAN-SMITH & MARCY**
PROFESSIONAL CORPORATION

2
Randall B. Aiman-Smith #124599
Reed W.L. Marcy #191531
3
Hallie Von Rock #233152
Brent A. Robinson #289373
4
7677 Oakport St. Suite 1150
Oakland, CA 94621
5
T 510.817.2711
F 510.562.6830
6
ras@asmlawyers.com
rwlm@asmlawyers.com
7
hvr@asmlawyers.com
bar@asmlawyers.com

8

9
Attorneys for Plaintiff Mohammed Rahman

**Additional counsel listed on following page

10

UNITED STATES DISTRICT COURT

11
FOR THE NORTHERN DISTRICT OF CALIFORNIA

12

| | |
|---|---|
| MOHAMMED RAHMAN, ALICIA NOEMI BAUTISTA DIAZ, AND PASCAL MOORE, individually and on behalf of all others similarly situated, | Case No. 3:20-cv-03047-WHO |
| | **NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; AND** |
| Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| v. | Date: February 22, 2023 |
| GATE GOURMET, INC., GATEGROUP U.S. HOLDING, INC., and DOES 1-10, inclusive, | Time: 2:00 PM |
| Defendants. | Hon. William H. Orrick Courtroom 2, 17th Floor San Francisco Courthouse 450 Golden Gate Avenue San Francisco, CA 94102 |
| | Action Filed May 4, 2020 |

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KANE MOON (SBN 249834)
ALLEN FEGHALI (SBN 301080)
LILIT TER-ASTVATSATRYAN (SBN 320389)
MOON & YANG, APC
1055 W. Seventh St., Suite 1880
Los Angeles, CA 90017
T: 213.232.3128
F: 213.232.3125
kane.moon@moonyanglaw.com
allen.feghali@moonyanglaw.com
lilit@moonyanglaw.com

Attorneys for Plaintiff Alicia Noemi Bautista Diaz

JOSEPH LAVI (SBN 209776)
VINCENT C. GRANBERRY. (SBN 276483)
MELISSA A. HUETHER. (SBN 316604)
LAVI & EBRAHIMIAN, LLP
8889 W. Olympic Blvd., Suite 200
Beverly Hills, California 90211
Telephone: (310) 432-0000
Facsimile: (310) 432-0001
jlavi@lelawfirm.com
vgranberry@lelawfirm.com
mhuether@lelawfirm.com

Attorneys for Plaintiff Pascal Moore

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................. 2

II. BACKGROUND ................................................................................................. 3

    A. Summary of Litigation. ........................................................................... 3

    B. Mediation and Settlement. ...................................................................... 5

    C. Preliminary Approval of the Settlement. ................................................ 5

III. TERMS OF THE SETTLEMENT ...................................................................... 5

    A. Settlement Class. ..................................................................................... 6

    B. Notice Process. ....................................................................................... 6

    C. The Gross Settlement Payment. .............................................................. 7

    D. Payment of Settlement Shares. ............................................................... 8

    E. Release by Class Members and Plaintiffs. ............................................. 9

IV. THE SETTLEMENT SHOULD BE GRANTED FINAL APPROVAL. ............ 9

    A. The Settlement Is Fair, Reasonable, and Adequate and Therefore Satisfies the Final Approval Standards Under Rule 23. ........................ 10

        1. The Strength of Plaintiff's Case; the Risk, Expense, Complexity, and Likely Duration of Further Litigation; and the Risk of Maintaining Class-Action Status Throughout Trial. .................................................................... 12

        2. The Amount Offered in Settlement Provides Substantial, Certain Benefits and Avoids the Risk, Cost, Delay and Burden of Further Litigation. ................. 13

        3. The Extent of Discovery Completed and the Stage of the Proceedings. ..... 15

        4. The Experience and Views of Counsel. ....................................... 15

        5. The Presence of a Government Participant. ................................. 16

        6. Class Members' Response to the Settlement Is Overwhelmingly Positive. 16

    B. The Settlement Is Presumed Fair Because the Parties Engaged in Arm's Length Negotiations. ................................................................... 17

    C. The Distribution of the Settlement Proceeds Is Equitable and Tailored to the Class Members' Respective Claims. ............................................ 18

    D. The Best Practicable Notice of Settlement Was Provided to the Class Members in Accordance with the Process Approved by the Court. ......................................... 19

V. The Settlement Administration Costs are Fair and Reasonable. ....................... 19

1

VI.    CONCLUSION ................................................................................................... 20

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases**

*Boyd v. Bechtel Corp.,* (N.D. Cal. 1979) 485 F.Supp. 610 .................................................... 11, 15

*Carrington v. Starbucks Corp.,* (2018) 30 Cal.App.5th 504 ...................................................... 13

*City of Detroit v. Grinnell Corp.,* (2d Cir. 1974) 495 F.2d 448 ................................................. 14

*Class Plaintiffs v. City of Seattle,* (9th Cir. 1992) 955 F.2d 1268 ............................................ 3, 10

*Ellis v. Naval Air Rework Facility,* (N.D. Cal. 1980) 87 F.R.D. 15 .................................... 11, 15

*Franklin v. Kaypro Corp.,* (9th Cir. 1989) 884 F.2d 1222 .......................................................... 9

*Garner v. State Farm Mut. Auto Ins. Co.,* (N.D. Cal. Apr. 22, 2010) 2010 WL 1687832 ........ 17

*Goldberger v. Integrated Res., Inc.,* (2d Cir. 2000) 209 F.3d 43 ............................................... 14

*Greko v. Diesel U.S.A., Inc.,* (N.D. Cal. April 26, 2013) No. 10-cv-02576 NC, 2013 WL
1789602 ................................................................................................................................. 13

*Gutilla v. Aerotek, Inc.,* (E.D. Cal. Mar. 22, 2017) No. 1:15-cv-00191-DAD-BAM, 2017 WL
2729864 ................................................................................................................................. 16

*Holmes v. Continental Can Co.* 706 F.2d 1144 (11th Cir. 1983) ............................................. 18

*AT & T Mobility Wireless Data Services Sales Tax Litigation,* (N.D. Ill. 2011) 789 F.Supp.2d
935 ........................................................................................................................................ 18

*Hyundai and Kia Fuel Econ. Litig.,* (9th Cir. 2019) 926 F.3d 539 ........................................... 19

*Jiangchen v. Rentech, Inc.,* No. CV 17-1490-GW(FFMx)) 2019 U.S.Dist.LEXIS 180474
(C.D.Cal. Oct. 10, 2019) ...................................................................................................... 15

*Lewis v. Starbucks Corp.* No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690 (E.D. Cal. Sept.
11, 2008) ............................................................................................................................... 16

*Linney v. Cellular Alaska P'ship,* (9th Cir. 1988) 151 F.3d 1234 ............................................. 15

*M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.,* (D. Mass 1987) 671 F. Supp. 819 .. 11

*Magadia v. Wal-Mart Associates, Inc.* (May 31, 2019) 384.F.Supp.3d 1058 ......................... 13

*Monterrubio v. Best Buy Stores, L.P.,* (E.D. Cal. 2013) 291 F.R.D. 443 ................................. 16

*Mullane v. Cent. Hanover Bank & Trust Co.,* (1950) 339 U.S. 306 .......................................... 21

*Nat'l Rural Telecomm. Coop. v. DirecTV*, Inc., (C.D. Cal 2004) 221 F.R.D. 523 .............. 18, 19

*Officers for Justice v. Civil Serv. Comm'n,* (9th Cir. 1982) 688 F.2d 615 ................... 10, 11, 15

*Ortiz v. Fibreboard Corp.,* (1999) 527 U.S. 815 ....................................................... 11

*Pac. Enters. Sec. Litig.*, (9th Cir. 1995) 47 F.3d 373 .................................................... 17

*Rodriguez v. West Publ'g Corp.* (9th Cir. 2009) 563 F.3d 948 ........................................ 17, 19

*Staton v. Boeing Co.* (9th Cir. 2003) 327 F.3d 938 ......................................................... 3

*Thieriot v. Celtic Ins. Co.* (N.D. Cal. April 21, 2011) No. C 10-04462 LB, 2011 WL 1522385 ....................................................................................................................... 14

*Tijero v. Aaron Bros., Inc.* (N.D. Cal. 2013) 301 F.R.D. 314................................................. 19

*Torrisi v. Tucson Elec. Power Co.*, (9th Cir. 1993) 8 F.3d 1370 ............................ 11

*Tsyn v. Wells Fargo Advisors, LLC,* (N.D. Cal. Nov. 1, 2018) No. 3:14-cv-02552-LB, ECF 172 ....................................................................................................................... 19

*Villafan v. Broadspectrum Downstream Services, Inc.*, (N.D. Cal. April 8, 2021) No. 18-cv-06741-LB, ECF 150 ..................................................................................................... 12

**Statutes**

28 U.S.C. § 1715(b) .................................................................................................... 16

**Rules**

Fed. R. Civ. P. 23(e)................................................................................................... 10

Fed. R. Civ. P. 23(e)(2) ............................................................................................. 2, 11

1

**NOTICE OF MOTION AND MOTION**

2
3

TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

4
5
6
7
8
9
10
11
12
13

NOTICE IS HEREBY GIVEN that on February 22, 2023 at 2:00 p.m., in Courtroom 2, 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, before Hon. William H. Orrick of the United States District Court, Northern District of California, Plaintiffs Mohammed Rahman (deceased), Alicia Noemi Bautista Diaz, and Pascal Moore, on behalf of themselves, the Plaintiff Class, the California Labor Workforce Development Agency, and all others similarly situated (collectively "Plaintiffs"), move the Court for final approval of the Class Action and Private Attorneys General Act Settlement Agreement and Release (the "Settlement Agreement" or the "Settlement," attached as Exhibit 1 to the Declaration of Hallie Von Rock in Support of Motion for Preliminary Approval of Class Action and PAGA Settlement (ECF 66-1), and entry of judgment in accordance with the Settlement.

14
15
16
17
18
19

Plaintiffs make this motion on the grounds that good cause exists and the Settlement, which was reached after arm's length negotiations by counsel for the Class and counsel for Defendants Gate Gourmet, Inc. and gategroup U.S. Holding, Inc.  ("Defendants" or "Gate Gourmet"), is fair and reasonable, has drawn an overwhelmingly favorable response from the Class (indeed, not a single objection to the Settlement was made), and should be given approval by the Court for all the reasons set forth in the memorandum in support of the motion.

20
21
22
23
24

The Motion is based on this notice, the following Memorandum of Points and Authorities, the Declarations of Counsel and Atticus Administration, and all other records, pleadings, and papers on file in the Action and such other evidence or argument as may be presented to the Court at the hearing on this Motion. Plaintiffs also submit a Proposed Order Granting Final Approval of Class Action Settlement with their moving papers.

25

Date: January 17, 2023                              Respectfully submitted,

26

/s/ Hallie Von Rock

27
28

Hallie Von Rock
AIMAN-SMITH & MARCY PC

Notice of Motion and Motion for Final Approval of Class Action and PAGA Settlement; Memo of Ps and As
*Rahman, et al. v. Gate Gourmet, Inc., et al*                                        Case No. 3:20-cv-03047-WHO
Page 1

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The Class Representatives, on behalf of themselves, the Plaintiff Class, and the Labor Workforce Development Agency (collectively "Plaintiffs"), having reached a class-wide settlement with Defendants Gate Gourmet, Inc. and gategroup U.S. Holding, Inc. (collectively "Defendants" or "Gate Gourmet") that was preliminarily approved by this court on October 3, 2022, now seek final approval of the settlement.[1]  The settlement of this wage and hour class and representative action meets the criteria for final approval. The settlement fairly resolves Plaintiffs' claims that Gate Gourmet violated California wage and hour laws by failing to pay all hours worked, failing to pay minimum wages, failing to pay overtime wages, failing to authorize and permit and/or make available meal periods, failing to authorize and permit and/or make available rest periods, failing to pay earned wages during employment, failing to provide accurate itemized wage statements,  failing to timely pay wages upon separation, failing to pay all wages due on regularly scheduled paydays, and violating the California Business and Professions Code.

After two years of litigation and extensive arm's-length negotiations with two mediations, the Parties have reached a global settlement of the Action, memorialized in the Settlement.

The Settlement, in the amount of $3,850,000, readily satisfies the Rule 23 standard of being "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Specifically:

- Class Counsel (who are highly experienced handling complex wage and hour class and collective action) conducted sufficient discovery to enable them to adequately evaluate the claims and defenses in the Action before agreeing to the Settlement. *See,* Declaration of Hallie Von Rock in Support of Final Approval ("Von Rock Dec.") ¶ 75; Declaration of Kane Moon ("Moon Dec.") ¶¶ 17-26; Declaration of Melissa Huether ("Huether Dec.") ¶¶ 6-12.

- The Settlement is consistent with the strengths and weaknesses of Plaintiffs' claims given the risk, expense, complexity, and likely duration of further litigation. *See, Staton v.*

---

[1] The Settlement is attached as Exhibit 1 to the Declaration of Hallie Von Rock in Support of

Notice of Motion and Motion for Final Approval of Class Action and PAGA Settlement; Memo of Ps and As
*Rahman, et al. v. Gate Gourmet, Inc., et al*                                               Case No. 3:20-cv-03047-WHO
Page 2

*Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).

- The Class responded overwhelmingly favorably to the Settlement. The Settlement Administrator sent out over 7,400 notices of Settlement and, as of the date of this filing, has received **no** objections. *See*, Von Rock Dec., ¶ 61.

Given the strong recovery and that the Settlement will provide significant monetary payments to Class Members, the Court should approve the Settlement. By any measure, the Settlement provides a great benefit to the Class and an efficient outcome in the face of expanding litigation. It is fair, reasonable, and adequate in all respects. Accordingly, as set forth herein, the Settlement should be finally approved.[2]

## II. BACKGROUND

### A. Summary of Litigation.

Class Counsel completed an initial investigation of the factual background and claims prior to the filing of initial pleadings. *See*, Von Rock Dec., ¶ 9.

On May 4, 2020, Plaintiff Rahman filed this class action in the Northern District of California and amended to add PAGA claims on July 10, 2020. *Id.*, ¶ 10.[3]

On September 4, 2020, Plaintiff Alicia Noemi Bautista Diaz filed a class action complaint in the Superior Court of California, County of Los Angeles, Case Number 20STCV34299. On October 15, 2020, the action was removed to the Central District of California, Case Number 2:20-cv-09454-SB-MAA; on June 28, 2021, the action was remanded to the Superior Court, County of Los Angeles; on December 22, 2021, the action was removed again to the Central District of California; on February 23, 2022, the action was transferred to the Northern District of California and then reassigned, Case Number 22-cv-1136-WHO. *Id.*, ¶ 11.

---

Motion for Preliminary Approval of Class Action and PAGA Settlement (ECF 66-1).
[2] In a separate motion filed on 12/13/2022 (ECF 73), Plaintiffs seek approval of an award of attorneys' fees, costs, and incentive awards for the Named Plaintiffs.
[3] Following preliminary approval of the settlement, Plaintiff Mohammed Rahman passed away.

Notice of Motion and Motion for Final Approval of Class Action and PAGA Settlement; Memo of Ps and As
*Rahman, et al. v. Gate Gourmet, Inc., et al*                    Case No. 3:20-cv-03047-WHO
Page 3

On May 10, 2021, Plaintiff Pascal Moore filed a class action complaint in the Superior Court of California, County of Los Angeles, Case Number 21STCV17642.  On July 19, 2021, the action was removed to the Central District of California, Case Number 2:21-cv-05834-ODW-SP.  *Id.*, ¶ 12.

Significant litigation about the State's interest in the actions occurred in the overlapping cases, followed by a global mediation of all claims asserted in the three cases.  *Id.*, ¶ 13.

On April 26, 2022, a global mediation with the Plaintiffs in the *Rahman*, *Diaz*, and *Moore* actions and Defendants was held with the highly respected mediator Hunter Hughes, III.  *Id.*, ¶ 14.

On May 31, 2022, a case management conference in the combined *Rahman/Diaz* proceedings was held and the parties informed the Court that a settlement had been reached.  A further case management conference was set for September 13, 2022.  *Id.*, ¶ 15.

On June 22, 2022, the parties filed a Stipulation and Proposed Order Re: Consolidated Complaint to consolidate all claims in the *Rahman*, *Diaz*, and *Moore* actions in this Court.  *Id.*, ¶ 16.  The Court granted that motion on June 27, 2022. (ECF-60)

The *Moore* action was dismissed in the Central District on July 29, 2022.  *Id.*, ¶ 17.

The Parties negotiated and drafted the Settlement Agreement and its exhibits.  *Id.*, ¶ 18.

The Parties prepared and filed a Motion for Preliminary Approval on August 24, 2022. (ECF-66).  *Id.*, ¶ 19.

The hearing on Plaintiffs' Motion for Preliminary Approval was held on September 28, 2022.  *Id.*, ¶ 20.

On October 3, 2022, the Court granted Plaintiffs' Motion for Preliminary Approval of Class Action and PAGA Settlement as Amended.  (ECF-71).  *Id.*, ¶ 21.

Notice of the settlement was sent to Class Members on November 16, 2022.  *Id.*, ¶ 22.

The deadline for objections and to opt-out of the settlement was January 17, 2023.  As of that date, no objections and no opt-outs have been received.  *Id.*, ¶ 23.

*See,* ECF 73.

Notice of Motion and Motion for Final Approval of Class Action and PAGA Settlement; Memo of Ps and As
*Rahman, et al. v. Gate Gourmet, Inc., et al*                                        Case No. 3:20-cv-03047-WHO
Page 4

B.    Mediation and Settlement.

The Parties participated in a lengthy mediation session before Hunter Hughes, III, a skilled mediator with many years of experience mediating employment matters. *Id.,* ¶ 24. The Parties then spent several weeks negotiating the settlement agreement, with several rounds of edits related to the terms of the Settlement. *Id.* ¶ 25.  Plaintiffs are represented by experienced class action litigators who feel strongly that the proposed Settlement achieves an excellent result for the Class Members.

This settlement was a product of non-collusive, arm's-length negotiations. *Id.* ¶ 26.  The litigious procedural history of this consolidated action further confirms the non-collusive nature of the settlement.  Plaintiff Rahman sought to intervene in the *Bautista-Diaz* action and objected to the settlement reached in the *Bautista-Diaz* action, which was valued at $2,400,000.  *Id.*  The global resolution of this consolidated action adds another $1,450,000 in funds to the settlement, for a total settlement amount of $3,850,000. *Id.*

C.    Preliminary Approval of the Settlement.

On September 28, 2022, the Court held the hearing on Plaintiffs' Motion for Preliminary Approval of Class Action and PAGA Representative Action Settlement and on October 3, 2022, filed its Order Granting Motion for Preliminary of Approval of Class Action Settlement.  In its Order, the Court found that: "[T]he Settlement Agreement, including all exhibits thereto, is preliminarily approved as fair, reasonable, and adequate, and in the best interests of the Settlement Class set forth below. The Court further finds that the Settlement Agreement substantially fulfills the purposes and objectives of the class and PAGA action, and provides substantial relief to the Settlement Class without the risks, burdens, costs, or delay associated with continued litigation, trial, and/or appeal." (ECF-71)

Review of the factors for final approval support the Court's preliminary findings that the Settlement was entered into good faith and is in the best interests of the Class Members.

III.    TERMS OF THE SETTLEMENT

The following is a summary of the material elements of the Settlement.

Notice of Motion and Motion for Final Approval of Class Action and PAGA Settlement; Memo of Ps and As
*Rahman, et al. v. Gate Gourmet, Inc., et al*                                    Case No. 3:20-cv-03047-WHO
Page 5

A.    Settlement Class.

The Class is defined as:

All individuals employed at any Gate Gourmet facility in California as a non-exempt employee at any time from May 4, 2016 through October 3, 2022 (the date of the preliminary approval of the settlement by the Court). *See,* Settlement Agreement at ¶ 9(b). The Settlement Class Period is from May 4, 2016 through October 3, 2022. *Id.*

There are a total of 7,413 current and former employees in the Class, none of whom excluded themselves from the Action. *See,* Von Rock Dec., ¶ 61.

B.    Notice Process.

The Court directed that the proposed Class Notice be sent to Class Members in the manner specified by the Settlement. (ECF-71, ¶¶ 8-10). The Parties implemented the Court's directions in this regard. *See,* Von Rock Dec., ¶ 57.

After obtaining quotes for multiple administrators, the Parties selected, and the Court approved, Atticus Administration ("Atticus"), to administer the Settlement. *See,* Von Rock Dec. ¶ 55; (ECF-71, ¶ 9).

On October 3, 2022, Plaintiffs' Counsel provided Atticus with the Order Granting Preliminary Approval, the approved Notice of Settlement, and the Settlement Agreement. *See,* Von Rock Dec. ¶ 57. The Parties agreed to the following settlement website domain: www.gategourmetsettlement.com, which included Plaintiffs' Motion for Preliminary Approval and supporting documents, the Settlement Agreement and Release, the Preliminary Approval Order, and Class Notice. *Id.* A copy of the final Notice of Class Action and Private Attorneys General Act Settlement and Release will be attached as an exhibit to the Atticus Declaration to be filed prior to the final approval hearing. Also on the settlement website was a form for Class Members to choose a digital payment option. The continued final approval hearing date of February 22, 2023 was also updated on the website. *Id.*

Counsel for Gate Gourmet provided Atticus with the Class List, containing mailing addresses for 7,413 Class Members, which included their names, employee identification numbers, last known address, Social Security Number, and number of workweeks during the

Notice of Motion and Motion for Final Approval of Class Action and PAGA Settlement; Memo of Ps and As
*Rahman, et al. v. Gate Gourmet, Inc., et al*                                                        Case No. 3:20-cv-03047-WHO
Page 6

Class and PAGA periods (the "Class Members' Data").

The mailing addresses contained in the Class Members' Data were processed and updated by Atticus using the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service. *See,* Von Rock Dec., ¶ 56. Prior to mailing Notice, Atticus updated the address information for Class Members on the Class List using data from the NCOA database. *Id*.

On November 16, 2022, Atticus mailed Class Notices to all Class Members via first-class mail. *Id*., ¶ 57. The Class Notices informed Class Members that they could submit an objection to the Settlement postmarked by January 17, 2023. *Id*.

As of January 17, 2023, 648 Notices have been returned to Atticus as undeliverable without a forwarding address. Atticus performed advanced address research for these undeliverables and re-mailed 562 Notices to the new addresses. Of the 562 remailed, 42 were returned as undeliverable without a forwarding address a second time. Atticus also received 7 Notices returned with a forwarding address from the USPS that were promptly remailed. As of January 17, 2023, of the 7,413 Notices mailed, 7,285 or 98.27% were deemed delivered and 128 or 1.73% deemed undeliverable. *See,* Atticus Declaration (to be filed prior to hearing).

As of January 17, 2023, Atticus has received no objections and no opt outs to the Settlement.

C.    The Gross Settlement Payment.

The Settlement creates a non-claims-made, non-reversionary common fund of $3,850,000 (the "Gross Settlement Amount"). (Settlement, ¶ 11 a.) The Net Settlement Amount is defined as the Gross Settlement Amount, less deductions for: Service Payment Awards to the Named Plaintiffs (not to exceed $7,500 each), attorney's fees to Class Counsel (not to exceed 33.33%, or $1,283,200.00), Class Counsel's litigation costs (not to exceed $52,546.67), administrative expenses to the Settlement Administrator, Atticus Administration ("Atticus"), (estimated at $40,000.00), and payment to the Labor & Workforce Development

**Notice of Motion and Motion for Final Approval of Class Action and PAGA Settlement; Memo of Ps and As**
*Rahman, et al. v. Gate Gourmet, Inc., et al*                                    Case No. 3:20-cv-03047-WHO
Page 7

Agency ("LWDA") for its 75% share of the PAGA penalties ($288,750.00).[4]  Settlement Agreement ¶ 11(b).

The Net Settlement Amount is comprised of two parts: (1) the "Net PAGA Settlement Amount" (i.e., $96,250, representing the Aggrieved Employees' 25% share of the total PAGA allocation, pursuant to Labor Code section 2699(i)); and (2) the "Net Class Settlement Amount" (*i.e.*, the entire Net Settlement Amount less the Net PAGA Settlement Amount, which is approximately $2,066,753).

D.     Payment of Settlement Shares.

The Net Settlement Amount to be paid to Class Members is approximately $2,066,753. *See,* Von Rock Dec., ¶ 59. Class Members will receive a settlement award payment without the need to submit a claim form. *Id.*

The allocation is set forth as follows:  (1) Each Participating Class Member's number of Workweeks during the Class Period will be divided by the total number of Workweeks for all Participating Class Members during the Class Period, and the resulting figure will be multiplied by the Net Settlement Amount; and (2) for PAGA Aggrieved Employees, the Net PAGA Settlement Amount of $96,250 will be divided by the total number of Workweeks for all PAGA Aggrieved Employees during the PAGA Period, and the resulting figure will be multiplied by the Net PAGA Settlement Amount. *Id.*, ¶ 60.

Class Members had 60 days to exclude themselves from the settlement or object to the settlement and motion for attorney's fees and costs. *Id.*, ¶ 61.  The deadline for filing an objection or request for exclusion was January 17, 2023.  As of the filing date of this brief, no objections or requests for exclusions have been received. *Id.*

Class Members had an option to choose a digital payment or a hard copy check.  *See,*

---

[4] The Parties agreed to allocate $385,000.00 of the Gross Settlement Amount to the settlement of the PAGA claims, which the Parties believe in good faith is a fair and reasonable apportionment. The Settlement Administrator shall pay 75%, or $288,750.00, of this amount to the LWDA, and 25% will remain as part of the Net Settlement Amount. *See,* Von Rock Dec. ¶ 32. The Net PAGA Settlement Amount is to be divided amongst all PAGA Aggrieved Employees by the number of work weeks worked during the PAGA period. *Id.*

**Notice of Motion and Motion for Final Approval of Class Action and PAGA Settlement; Memo of Ps and As**
*Rahman, et al. v. Gate Gourmet, Inc., et al*                                    **Case No. 3:20-cv-03047-WHO**
Page 8

Settlement Agreement, ¶ 31.  If a Class Member does not affirmatively choose a digital payment, a hard copy check will be mailed.  *Id.*  The digital payment options included E-Mastercard, Paypal, and Venmo. Class members will have one hundred eighty (180) calendar days to activate their digital payment.  *Id.*

All settlement checks will be valid for one hundred eighty (180) calendar days.  At the end of the 180-day period, settlement checks will be canceled, and digital payments not activated will be combined with the uncashed settlement checks. *Id.*

If the total residual amount of uncashed settlement checks and non-activated digital payments is less than $50,000.00, then the amount will revert to *cy près*.  *See,* Settlement Agreement ¶ 31(d)(i).  The Parties propose that the *cy près* recipient be Open Door Legal, which provides legal services assisting low-income, working families and promotes better understanding of the conditions, policies, and institutions that affect the well-being of workers and their families and communities.  *See,* Von Rock Dec. ¶ 64; Settlement Agreement ¶ 31(d)(i).

If the total residual amount is $50,000.00 or greater, a second distribution will occur to those Class Members who cashed their Settlement Award checks and activated their digital payments.  *See,* Von Rock Dec. ¶ 65; Settlement Agreement, ¶ 31(d)(ii).  Any residual funds uncashed after the second distribution will revert to the *cy près* recipient. *Id.*

E.      Release by Class Members and Plaintiffs.

Upon the Final Approval by the Court, each Class Member and Aggrieved Employee fully releases all claims that were raised in the litigation and all claims that could have been brought based on the facts alleged in the complaint.  *See,* Von Rock Dec., ¶ 31; Settlement Agreement ¶ 35. The Representative Plaintiffs also agree to a general release from all known and unknown claims they may have against the Released Parties.  *Id.*; Settlement Agreement ¶ 36.

IV.     **THE SETTLEMENT SHOULD BE GRANTED FINAL APPROVAL.**

Federal law strongly favors and encourages settlements, especially in class actions. *See, Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("[T]here is an overriding

Notice of Motion and Motion for Final Approval of Class Action and PAGA Settlement; Memo of Ps and As
*Rahman, et al. v. Gate Gourmet, Inc., et al*                                           Case No. 3:20-cv-03047-WHO
Page 9

public interest in settling and quieting litigation. This is particularly true in class action suits."). Moreover, when reviewing a motion for approval of a class settlement, the Court should give due regard to "what is otherwise a private consensual agreement negotiated between the parties," and must therefore limit the inquiry "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

A.    The Settlement Is Fair, Reasonable, and Adequate and Therefore Satisfies the Final Approval Standards Under Rule 23.

"[V]oluntary conciliation and settlement are the preferred means of dispute resolution," especially in complex class actions. *Officers for Justice*, 688 F.2d at 625. Class action lawsuits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. *Class Plaintiffs*, 955 F.2d at 1276 (noting that "strong judicial policy […] favors settlements, particularly where complex class action litigation is concerned"). On a motion for final approval of a class action settlement under Federal Rule of Civil Procedure 23(e), a court's inquiry is whether the settlement is "fair, adequate and reasonable," recognizing that "'it is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness.'" *Staton*, 327 F.3d at 952 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

When determining whether to grant final approval, the Court should balance "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel […] and the reaction of the class members to the proposed settlement." *Officers for Justice*, 688 F.2d at 625*; see also, Class Plaintiffs*, 955 F.2d at 1291 (quoting *id.); accord, Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."

Notice of Motion and Motion for Final Approval of Class Action and PAGA Settlement; Memo of Ps and As
*Rahman, et al. v. Gate Gourmet, Inc., et al*                                              Case No. 3:20-cv-03047-WHO
Page 10

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd* 661 F.2d 939 (9th Cir. 1981) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight.").

The Court should begin its analysis of this Settlement with a presumption that it is fair and should be approved, due to (1) the fact that not a single Class Member objected to the Settlement, (2) the meaningful discovery conducted, (3) Class Counsel's significant experience in this kind of litigation, and (4) the arm's-length negotiations before an experienced mediator. *See, Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999) (holding that arm's-length negotiations conducted by competent counsel after appropriate discovery are prima facie evidence that the settlement is fair and reasonable); *M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass 1987) ("Where, as here, a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation, conducted by capable counsel, it is presumptively fair."). These factors are well satisfied here.

A court may approve a proposed class-action settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "The court need not ask whether the proposed settlement is ideal or the best possible; it determines only whether the settlement is fair, free of collusion, and consistent with the named plaintiff's fiduciary obligations to the class." *See, Villafan v. Broadspectrum Downstream Services, Inc.*, No. 18-cv-06741-LB, ECF 150 at *10-11 (N.D. Cal. April 8, 2021) (Beeler, M.J.), citing *Hanlon*, 150 F.3d at 1026–27 (9th Cir. 1998). In *Hanlon*, the Ninth Circuit identified factors relevant to assessing a settlement proposal: "[(1)] the strength of the plaintiff's case; [(2)] the risk, expense, complexity, and likely duration of further litigation; [(3)] the risk of maintaining class-action status throughout trial; [(4)] the amount offered in settlement; [(5)] the extent of discovery completed and the stage of the proceeding; [(6)] the experience and views of counsel; [(7)] the presence of a government participant; and [(8)] the reaction of the class members to the proposed settlement." *Id.* at 1026 (citation omitted).

**Notice of Motion and Motion for Final Approval of Class Action and PAGA Settlement; Memo of Ps and As**
*Rahman, et al. v. Gate Gourmet, Inc., et al*                                                    Case No. 3:20-cv-03047-WHO
Page 11

Applying this standard of review to other federal and California wage and hour class actions, this Court and others in this District have previously approved settlements similar to that reached in this case.  Likewise, in its October 3, 2022 order, the Court preliminarily approved the Settlement with respect to the Class Members. (*See,* ECF 71).  Accordingly, the only step that remains is final approval of the Settlement as to the Class. Consistent with the precedent of this Circuit and this Court's own decisions, the Settlement should be finally approved.

> 1. *The Strength of Plaintiff's Case; the Risk, Expense, Complexity, and Likely Duration of Further Litigation; and the Risk of Maintaining Class-Action Status Throughout Trial.*

Weighing the significant risks associated with further litigation against the strengths of Plaintiffs' case supports approval of the Settlement here.  When a party continues to deny liability, there is an inherent risk in continuing litigation.  Litigating the class action claims, here, would require substantial additional preparation and resources.  *See,* Von Rock Dec. ¶ 71. Plaintiffs alleged that employees were subject to Defendants' control because the building layouts for the airports and warehouses are spread out, the time clocks were not at the entry, but rather distant from the turnstiles and, thus, employees were required to walk from the entry turnstiles to their posts to clock in and out, and some employees were required to don and doff uniforms and/or safety equipment, had to go to their lockers to store items or retrieve uniforms and equipment, and were submitted to searches.  *Id.*  Defendants countered that Plaintiffs' claims for preliminary and postliminary activities would fail because the time spent between entering the facility and clocking in, or conversely, clocking out and exiting the facility was not time under the employer's control.  *Id.*  Further, Defendants argued that there would be manageability issues to determine the amount of time during these preliminary and postliminary activities which might be considered under employer control or not, thus defeating class certification.  *Id.*  If the Court had sided with Defendants on either of those defenses, Class Members may not receive any compensation.  *Id.*

As to PAGA penalties, it is within the Court's discretion to determine the amount,

**Notice of Motion and Motion for Final Approval of Class Action and PAGA Settlement; Memo of Ps and As**
*Rahman, et al. v. Gate Gourmet, Inc., et al*                                    Case No. 3:20-cv-03047-WHO
Page 12

1  which could have resulted in a lesser award than recovered under the Settlement. *Id.,* ¶ 72.  For

2  example, in *Carrington v. Starbucks Corp.,* 30 Cal.App.5th 504 (2018), the trial Court reduced

3  the PAGA penalty amount to only $5 per pay period and in *Magadia v. Wal-Mart Associates,*

4  *Inc.* 384.F.Supp.3d 1058 (May 31, 2019), the Court awarded only $5.8 Million of the $34.7

5  Million in PAGA penalties sought by Plaintiffs.

6          While Plaintiffs are confident in their ability to successfully litigate the alleged claims

7  on the merits, the risks of doing so are substantial. In *Thieriot v. Celtic Ins. Co.*, No. C 10-

8  04462 LB, 2011 U.S.Dist.LEXIS 44852, at *5 (N.D. Cal. April 21, 2011) (Beeler, M.J.), the

9  court approved a settlement agreement in which the defendant specifically denied liability,

10  noting that such denial of liability illustrated the risk to continued litigation. *See also, Greko v.*

11  *Diesel U.S.A., Inc*. No. 10-cv-02576 NC, 2013 WL 1789602, at *5 (N.D. Cal. April 26, 2013)

12  ("[E]ven with a strong case, further litigation would be time-consuming and expensive …).

13  Here, Gate Gourmet similarly continues to contest liability and the propriety of class

14  certification, injecting uncertainty and risk in continuing to litigate.

15          Resolving this case by means of the Settlement will yield a prompt, certain, and

16  substantial recovery for the Class Members. Such a result will benefit the Parties and the court.

17  It will bring finality to years of arduous litigation and will foreclose the possibility of

18  expanding litigation.

19          Moreover, this Rule 23 California class action involved intricate legal and factual

20  questions as the parties prepared for certification and trial.  As is typical with any case, but

21  especially so with class actions, appeals would probably follow, with the result that payments

22  to Class Members, if any, would likely occur only after several years of delay.  In contrast, the

23  Settlement will yield a prompt, certain, and substantial recovery for the Class Members,

24  benefiting the Parties and the court.

25                  2.    *The Amount Offered in Settlement Provides Substantial,*
                         *Certain Benefits and Avoids the Risk, Cost, Delay and*
26                       *Burden of Further Litigation.*

27          The Settlement is substantial, especially as its adequacy must be judged as "a yielding

28  of absolutes and an abandoning of highest hopes […]  Naturally, the agreement reached

**Notice of Motion and Motion for Final Approval of Class Action and PAGA Settlement; Memo of Ps and As**
*Rahman, et al. v. Gate Gourmet, Inc., et al*                                              Case No. 3:20-cv-03047-WHO
Page 13

1   normally embodies a compromise; in exchange for the saving of cost and elimination of risk,

2   the parties each give up something they might have won had they proceeded with litigation[.]"

3   *Officers for Justice*, 688 F.2d at 624 (citations omitted).  Accordingly, the "settlement is not to

4   be judged against a […] speculative measure of what might have been achieved." *Linney v.*

5   *Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (emphasis in original, citation

6   omitted).  In the end, "[s]ettlement is the offspring of compromise; the question we address is

7   not whether the final product could be prettier, smarter or snazzier, but whether it is fair,

8   adequate and free from collusion." *Hanlon*, 150 F.3d at 1027.  In addition, the Court should

9   consider that the Settlement provides for payment to the Class now, rather than a speculative

10  payment many years down the road. *See, generally, City of Detroit v. Grinnell Corp.*, 495 F.2d

11  448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209

12  F.3d 43 (2d Cir. 2000).

13        Here, the value of the Settlement – $3,850,000 – is not only fair and reasonable, but an

14  exceptional result, especially in light of the initial settlement offered by Defendants in the

15  *Bautista-Diaz* action of $2,400,000. *See,* Von Rock Dec., ¶ 73.  Moreover, the Settlement

16  amount represents a meaningful recovery for Class Members.  *See., e.g., Jiangchen v. Rentech,*

17  *Inc.,* No. CV 17-1490-GW(FFMx)) 2019 U.S.Dist.LEXIS 180474 (C.D.Cal. Oct. 10, 2019), at

18  *21 (finding 10% recovery of the total maximum damages potentially available reasonable in

19  light of the risks of continued litigation).  The negotiated non-reversionary Gross Settlement

20  Amount of $3,850,000 represents 23% of the wage and break violations calculated

21  ($17,025,552) and is significantly higher than the $2,019,383 calculated if Plaintiffs were

22  limited only to their security search claims.  *See,* Von Rock Dec., ¶¶ 32-54.

23        The Settlement will result in immediate and certain payment to Class Members of

24  meaningful amounts.  *Id.*, ¶ 54.  Overall, the net average claim amount is approximately $278

25  for Class Members, with the highest claim payment being approximately $1,144.  *Id.*  These

26  figures are substantial given the risks involved, the claims at issue, and the dearth of case

27  authority on compensation owed for ingress and egress time.  This provides significant

28  compensation to the Class Members and provides an excellent recovery in the face of

Notice of Motion and Motion for Final Approval of Class Action and PAGA Settlement; Memo of Ps and As
*Rahman, et al. v. Gate Gourmet, Inc., et al*                                                      Case No. 3:20-cv-03047-WHO
Page 14

expanding and uncertain litigation. Class Members were provided estimates of their claim amounts in the Notice of settlement and no objections were received. In light of all of the risks, the settlement amount is fair, reasonable, and adequate.

### 3. The Extent of Discovery Completed and the Stage of the Proceedings.

The amount of discovery completed prior to reaching a settlement is important because it bears on whether the Parties and the Court have sufficient information before them to assess the merits of the claims. *See, e.g.*, *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 617, 625 (N.D. Cal. 1979); *Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008). Informal discovery may also assist parties with "form[ing] a clear view of the strengths and weaknesses of their cases." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013).

The Parties engaged in extensive discovery that has enabled both sides to assess the claims and potential defenses in this action, including formal and informal written discovery. *See*, Von Rock Dec., ¶¶ 4-7. This allowed the Parties to accurately assess the legal and factual issues that would arise if the case proceeded to trial. *Id*. In addition, in reaching this Settlement, Class Counsel relied on their substantial litigation experience in similar wage and hour class actions. Class Counsel's liability and damages evaluation was premised on a careful and extensive analysis of the effects of Defendants' compensation policies and practices on Class Members' pay. *Id*. Further, Plaintiffs engaged an expert to calculate the damages and penalties analysis for mediation using Defendants' records. *Id*. Ultimately, facilitated by mediator Hunter Hughes III, the Parties used this information and discovery to fairly resolve the litigation. *Id*., ¶ 8.

### 4. The Experience and Views of Counsel.

The judgment of experienced counsel regarding the settlement is entitled to great weight. *Hanlon*, 150 F.3d at 1026; *Boyd*, 485 F.Supp. at 622; *Ellis*, 87 F.R.D. at 18. Reliance on such recommendations is premised on the fact that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir.

Notice of Motion and Motion for Final Approval of Class Action and PAGA Settlement; Memo of Ps and As
*Rahman, et al. v. Gate Gourmet, Inc., et al*                                         Case No. 3:20-cv-03047-WHO
Page 15

2009) (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).

Here, both parties agreed that the Settlement was fair, adequate, and reasonable. Plaintiffs' Counsel and Defendants' Counsel each have extensive experience in prosecuting and litigating class action wage-and-hour suits like this one. The fact that qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate heavily favors this Court's approval of the Settlement.

### 5.    The Presence of a Government Participant.

Defendant provided Notice pursuant to Section 1715(b) of the Class Action Fairness Act of 2005 ("CAFA"), which states that "each defendant that is participating in the proposed settlement shall serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official, a notice of the proposed settlement....." 28 U.S.C. § 1715(b). Section 1715(d) states that a Court may not issue an order granting final approval of a proposed settlement "earlier than 90 days after the latter of the dates on which the appropriate Federal official and the appropriate State official are served with the notice." 28 U.S.C. § 1715(b). Defendants served the CAFA Notices on November 23, 2022. The service was completed more than 90 days prior to the hearing on Final Approval and, thus, satisfies the notice requirements. *See,* Von Rock Dec., ¶ 76. No objections or comments have been received in response to the CAFA notices. *Id*.

In addition, on October 7, 2022, Plaintiffs submitted the proposed settlement to the LWDA through its online portal. *Id*., ¶ 77. The LWDA has not commented on or objected to the settlement. Accordingly, the Parties' submission is satisfactory under PAGA. *See, e.g., Gutilla v. Aerotek, Inc.*, No. 1:15-cv-00191-DAD-BAM, 2017 WL 2729864, at *3 (E.D. Cal. Mar. 22, 2017) (after reviewing the parties' submission of proposed settlement to LWDA, finding PAGA settlement "fair, reasonable, and adequate in light of the public policy goals of PAGA").

### 6.    Class Members' Response to the Settlement Is Overwhelmingly Positive.

The Court can presume that the Settlement is fair because not a single Class Member objected to the Settlement. "The absence of a large number of objections to a proposed class

Notice of Motion and Motion for Final Approval of Class Action and PAGA Settlement; Memo of Ps and As
*Rahman, et al. v. Gate Gourmet, Inc., et al*                                                    Case No. 3:20-cv-03047-WHO
Page 16

action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal 2004); *see also, Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832, 837-838 (9th Cir. 1976). The overwhelmingly positive reaction by the Class strongly supports final approval of the Settlement.

B.     The Settlement Is Presumed Fair Because the Parties Engaged in Arm's Length Negotiations.

"Where a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable." *Garner v. State Farm Mut. Auto Ins. Co.*, 2010 WL 1687832, *13 (N.D. Cal. Apr. 22, 2010); *see also, Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 324 (N.D. Cal. 2013); *Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution..."); *Nat'l Rural Telecomm.*, 221 F.R.D. at 528; *Tsyn v. Wells Fargo Advisors, LLC*, No. 3:14-cv-02552-LB, ECF 172 (N.D. Cal. Nov. 1, 2018) (Beeler, M.J.) .

Here, the settlement was a product of non-collusive, arm's-length negotiations. *See,* Von Rock Dec., ¶ 26. The litigious procedural history of this consolidated action further confirms the non-collusive nature of the settlement. Plaintiff Rahman sought to intervene in the *Bautista-Diaz* action and objected to the settlement reached in the *Bautista-Diaz* action, which was valued at $2,400,000. *Id.* The global resolution of this consolidated action adds another $1,450,000 in funds to the settlement. *Id.*

The Parties participated in a lengthy mediation session before Hunter Hughes, III, a skilled mediator with many years of experience mediating employment matters. *Id.,* ¶ 24. The Parties then spent several weeks discussing settlement and negotiating the settlement agreement, with several rounds of edits related to the terms of the Settlement. *Id.,* ¶ 25. Plaintiffs are represented by experienced class action litigators who feel strongly that the proposed Settlement achieves an excellent result for the Class Members.

**Notice of Motion and Motion for Final Approval of Class Action and PAGA Settlement; Memo of Ps and As**
*Rahman, et al. v. Gate Gourmet, Inc., et al*                                                                Case No. 3:20-cv-03047-WHO
Page 17

1

2

C.    The Distribution of the Settlement Proceeds Is Equitable and Tailored to the
Class Members' Respective Claims.

3

In an effort to equitably distribute the Settlement proceeds, the Parties have agreed to

4 allocate funds amongst Class Members in a manner that recognizes the amount of time that the

5 particular Class Member worked for Defendant in the applicable limitations period.  The

6 allocation method, which is based on the number of workweeks, will ensure that workers who

7 were subjected to the unpaid off-the-clock policies for longer periods of time due to their

8 longer tenure with Defendant receive a greater recovery.  Thus, the allocation is closely

9 tailored to each Class Members' claim.

10     A class action settlement need not benefit all class members equally.  *Holmes v.*

11 *Continental Can Co.,* 706 F.2d 1144, 1148 (11th Cir. 1983); *In re AT & T Mobility Wireless*

12 *Data Services Sales Tax Litigation,* 789 F.Supp.2d 935, 979–80, 2011 WL 2204584 at *42

13 (N.D. Ill. 2011).  Rather, although disparities in the treatment of class and collective members

14 may raise an inference of unfairness and/or inadequate representation, this inference can be

15 rebutted by showing that the unequal allocations are based on legitimate considerations.

16 *Holmes,* 706 F.2d at 1148; *In re AT & T,* 789 F.Supp.2d at 979-80.  Plaintiffs provide rational

17 and legitimate bases for the allocation method here, and the Parties submit that it should be

18 approved by the Court.

19     Additionally, Class Members were given the option to receive their settlement amount

20 in a digital form.  These digital payment options provide more flexibility for Class Members

21 and provide a substantial benefit to Class Members who do not have traditional bank accounts.

22 The Settlement Administrator provided a secure link on the settlement website for Class

23 Members to submit a request for a digital payment option.  *See*, Von Rock Dec., ¶ 62.  For

24 those Class Members who did not submit a request for a digital payment option, the Settlement

25 Administrator will mail a check to the Class Member.  This added level of payment flexibility

26 will encourage participation in the Settlement.

27

28

**Notice of Motion and Motion for Final Approval of Class Action and PAGA Settlement; Memo of Ps and As**
*Rahman, et al. v. Gate Gourmet, Inc., et al*                                      Case No. 3:20-cv-03047-WHO
Page 18

D.    The Best Practicable Notice of Settlement Was Provided to the Class Members in Accordance with the Process Approved by the Court.

The mailing of the Class Notice to Class Members, and the general administration of the notice process as described above, meets the requirements for the "best notice practicable" in this case as necessary to protect the due process rights of Class Members. (ECF 128); *see also, In re Hyundai and Kia Fuel Econ. Litig.,* 926 F.3d 539, 567 (9th Cir. 2019) ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.") (internal quotation marks omitted)

Indeed, individual Class Notice was served on each Class Member at his or her most recent address, after cross-referencing each address with U.S. Post Office records; skip-tracing and other techniques were used to forward as many undeliverable notices as possible; Class Members also were directed to a dedicated website that included the Notice of Class Action and Private Attorneys General Act Settlement and Release and other Settlement-related information.  Moreover, both the Class Notice and settlement website informed Class Members of the pendency of the action and their right to object to the Settlement.  *See, Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (best practicable notice is notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections").  The notice procedures meet the "best practicable notice" standard and the Court may proceed to determine the fairness and adequacy of the Settlement, and order its approval, secure in the knowledge that all absent Class Members have been given the opportunity to participate fully in the opt-out, comment, and approval process.

## V.    THE SETTLEMENT ADMINISTRATION COSTS ARE FAIR AND REASONABLE.

The Settlement Administration costs are $40,000.  *See,* Von Rock Dec. ¶ 56.  The amount of administration costs was included in the Notice sent to Class Members. There were no objections by Class Members to the costs of the claims administration.

Notice of Motion and Motion for Final Approval of Class Action and PAGA Settlement; Memo of Ps and As
*Rahman, et al. v. Gate Gourmet, Inc., et al*                                    Case No. 3:20-cv-03047-WHO
Page 19

Atticus provided the most competitive bid after Plaintiffs obtained quotes from other established administration firms. *Id.* The administration costs include the services of distributing the Postcard Notices of Settlement via U.S. mail, re-mailing any Postcard Notices returned as non-deliverable but with forwarding addresses, and re-mailing the Notice to any new address obtained by way of skip-trace. *Id.* Atticus also maintained a settlement website and toll-free number, processed any workweek disputes, calculated the settlement payments, and will calculate all applicable payroll taxes, withholdings, and deductions, and prepare and issue all disbursements to Class Members, Service Awards to Plaintiffs, payment to the LWDA, payment to Class Counsel for fees and costs, and payment to itself for fees in administering the settlement.

Atticus Administration will continue to administer the Settlement and provide a compliance report. Accordingly, the reasonable administrative costs of $40,000 should be approved.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion.

Dated: January 17, 2023                              AIMAN-SMITH & MARCY

/s/ Hallie Von Rock
————————————————————
Hallie Von Rock
Attorneys for Plaintiff Mohammed Rahman

Dated: January 17, 2023                              MOON & YANG

/s/ Kane Moon
————————————————————
KANE MOON
ALLEN FEGHALI
Attorneys for Plaintiff Alicia Noemi Bautista Diaz

**Notice of Motion and Motion for Final Approval of Class Action and PAGA Settlement; Memo of Ps and As**
*Rahman, et al. v. Gate Gourmet, Inc., et al*                              Case No. 3:20-cv-03047-WHO
Page 20

1  Dated: January 17, 2023                LAVI & EBRAHIMIAN

2

3                                          /s/ Melissa A. Huether

4                                          JOSEPH LAVI
                                           VINCENT GRANBERRY
5                                          MELISSA A. HUETHER
                                           Attorneys for Plaintiff Pascal Moore
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Notice of Motion and Motion for Final Approval of Class Action and PAGA Settlement; Memo of Ps and As
*Rahman, et al. v. Gate Gourmet, Inc., et al*                                Case No. 3:20-cv-03047-WHO
Page 21

# CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing document to be electronically filed with the Clerk of the Court for the United States District Court, Northern District of California, by using the Court's CM/ECF system on January 17, 2023.  Service will be accomplished on all parties by the Court's CM/ECF system.


Dated: January 17, 2023          AIMAN-SMITH & MARCY

                                 /s/ Hallie Von Rock
                                 _____
                                 Hallie Von Rock
                                 Attorneys for Plaintiff Mohammed Rahman


Dated: January 17, 2023          MOON & YANG

                                 /s/ Kane Moon
                                 _____
                                 KANE MOON
                                 ALLEN FEGHALI
                                 Attorneys for Plaintiff Alicia Noemi Bautista Diaz


Dated: January 17, 2023          LAVI & EBRAHIMIAN

                                 /s/ Melissa A. Huether
                                 _____
                                 JOSEPH LAVI
                                 VINCENT GRANBERRY
                                 MELISSA A. HUETHER
                                 Attorneys for Plaintiff Pascal Moore

**Notice of Motion and Motion for Final Approval of Class Action and PAGA Settlement; Memo of Ps and As**
*Rahman, et al. v. Gate Gourmet, Inc., et al*                              Case No. 3:20-cv-03047-WHO
Page 22